**Albert R. VARHOLA, et al., Plaintiffs,**

v.

**CYCLOPS CORPORATION, et al., Defendants.**

**No. C–1–83–394.**

United States District Court, S.D. Ohio, W.D.

Nov. 26, 1985.

Paul H. Tobias, Cincinnati, Ohio, Don Anspaugh, Columbus, Ohio, for plaintiffs.

Daniel O. Berger, Cincinnati, Ohio, for defendants.

## ORDER

HERMAN JACOB WEBER, District Judge.

This matter is before the Court upon defendants' Motion for Summary Judgment on all plaintiffs' counts (doc. no. 38) and plaintiffs' Motion for Summary Judgment on Counts Two, Six, Ten and Fourteen (doc. no. 37).

The parties entered into certain stipulations, solely for the purpose of determining the cross-Motions for Summary Judgment. The stipulations are attached to this decision as an appendix.

It is stipulated that all plaintiffs were eligible for pension benefits under Sec. 4.7 and/or 4.8 of the Salary Plan of Cyclops Corporation on November 21, 1980 if their "continuous service was broken by reason of a permanent shut-down" of the Cyclops Corporation coke works. All plaintiffs duly applied for benefits under the Plan. The pension board, under the facts of this case, held that the plaintiffs were not entitled to Rule of 65 or 70/80 retirement benefits (hereinafter referred to as "shutdown benefits") under Sec. 4.7 and 4.8, as

the board concluded there was no break in the continuous service of plaintiffs because of a termination due to a permanent shutdown of a division, plant, office or department, or subdivision of any of them.

Sections 4.7 and 4.8 of the Salaried Plan provided, in pertinent part:

Section 4.7

Any Participant who has at least 15 years of continuous service and has not attained age 62 but (i) has attained age 55 and whose combined age and years of continuous service equal 70 or more, or (ii) whose combined age and years of continuous service equal 80 or more, and (a) whose continuous service is broken by reason of a permanent shutdown of a division, plant, office or department, or subdivision of any of them ... shall be eligible to retire ... and shall be eligible for a pension. (Called 70/80 retirement.)

Section 4.8

Any Participant (i) who has at least 20 years of continuous service as of his last day worked ..., (ii) whose combined age and years of continuous service equal 65 or more, and (iii) whose continuous service is broken because of (a) a permanent shutdown of a division, plant, office or department, or subdivision of any of them, ... and who has not been offered a transfer to another location, shall be eligible to retire ... and shall upon his retirement be eligible for a pension. (Called Rule of 65 retirement.)

Section 1.1(f) of the Plan defines company as:

"(f) Company—Cyclops Corporation, a Pennsylvania corporation, and any successor to it in ownership of substantially all its assets; ..."

■ This Court must affirm the decision of the pension board unless it can find that the pension board acted arbitrarily or capriciously. *Moore v. Reynolds Metals Co. Retirement Program for Salaried Employees*, 740 F.2d 454, 457 (6th Cir. 1984), *cert. denied*, 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985); *Van Guten v. Central States Southeast & Southwest Areas Pension Fund*, 672 F.2d 586 at 587 (6th Cir.1982). Courts may review the administration of a pension plan because Congress has imposed a fiduciary duty to administer such plans for the sole and exclusive benefit of the beneficiaries. *Moore, supra.*

■ The Court finds that the pension board's interpretation of the plan was arbitrary and capricious in finding that plaintiffs were not entitled to "shutdown benefits." The Salaried Pension Plan is clear and unambiguous. The plain and unambiguous language of the plan results in a mandated determination that plaintiffs have met the conditions of eligibility to retire under Section 4.7 and/or 4.8 of the Plan.

The stipulated facts disclose that plaintiffs have the requisite ages and years of service with Cyclops, and that the coke works was permanently shutdown by Cyclops. It is the *opinion of this Court that* by the sale of the coke works to a stranger who is not a successor corporation under the terms of Sec. 1.1(f), Cyclops permanently shutdown the coke works as contemplated in the Salaried pension plan, particularly, as plaintiffs were not offered a transfer to another location owned and operated by Cyclops or its wholly-owned subsidiary or were not given the opportunity to consent to the new plan with the stranger employer. The plaintiffs have thus met the qualifications necessary to retire under the plan.

The unambiguous terms of the Salaried Plan provide that any participant is entitled to retire if there is a permanent shutdown by Cyclops, and the participant meets the other requirements of the Plan. Here, there was a permanent shutdown of the coke works by Cyclops. Cyclops, *from its point of view*, permanently shutdown the coke plant by selling the plant. Cyclops no longer owns the plant, and therefore it can no longer operate or run the plant. Additionally, plaintiffs were not offered a transfer to another location *within Cyclops*. Finally, no attempt was made to secure the voluntary agreement of the plaintiffs to transfer to the stranger company. Rather,

they were forced to transfer or face economic disaster. The plan paragraphs in issue only involve the relationship of Cyclops to its salaried employees, and when Cyclops permanently shutdown its facility, the clauses protected the plaintiffs. Plaintiffs are therefore entitled to summary judgment on Counts Two and Ten of the Amended Complaint as there is no material fact in issue and plaintiffs are entitled to judgment as a matter of law. Plaintiffs are entitled to full immediate pension benefits on a plant shutdown basis as of November 21, 1980, which includes medical insurance benefits.

The record also reflects that no material fact is in issue, and defendants are entitled to summary judgment on all of the remaining counts of the Amended Complaint.

■ Plaintiffs allege pursuant to the first count of the Amended Complaint that they have been treated in a discriminatory manner, by affording certain Cyclops employees at the Portsmouth facility the opportunity to retire on the basis of a plant shutdown pension, while denying such option to plaintiffs. The situation of the employees at the coke plant is unique and it is not disputed that these employees were all treated the same.

The record contains no material facts to support a finding that any unlawful discrimination took place. Consequently, defendants are entitled to summary judgment as a matter of law on Count One.

As regards plaintiffs' request for severance pay (Count Twelve of the Amended Complaint), plaintiffs admit in their Brief in Opposition to Defendants' Motion for Summary Judgment at 26, that if they prevail on their claims for Rule of 65 and 70/80 benefits, they are not entitled to severance pay. Therefore, summary judgment is GRANTED to defendants under Count Twelve of the Amended Complaint.

■ Plaintiffs' request for compensatory damages and punitive damages is not supported. The record reveals that plaintiffs are entitled to "shutdown" pensions and medical benefits flowing therefrom. Plaintiffs are not otherwise damaged. Thus

summary judgment is GRANTED for defendants on Counts Five and Six of the Amended Complaint.

The Court compliments Cyclops on its community involvement and spirit in its attempt to keep jobs and its coke works in operation in Portsmouth. While Cyclops's interpretation of the provisions of the Salaried Plan are not sustained here, no material facts are in issue and no reasonable person could conclude based on the record that defendants wilfully, with malice, and through extreme and outrageous conduct, denied pensions to plaintiffs or made misrepresentations to them. Nowhere in the record is there any evidence which could reasonably be found to be outrageous conduct on the part of defendants.

■ Finally, in all other respects, summary judgment is GRANTED defendants. In particular, the Court will address the assertions of plaintiffs in Count Four of the Amended Complaint. The pertinent portions of the Amended Complaint read:

34. Defendants, by failing to comply with the terms of its representations made by authorized Cyclops corporate personnel on or about October 28, 1980 to the effect that the pension benefits of the employees to be transferred (including plaintiffs) would be covered under a McLouth pension plan and that in the event McLouth failed as an operating industrial entity and/or filed bankruptcy within five years of the date of sale, Cyclops would 'guarantee' the employees' pension benefits and/or cause such employees to revert to coverage under the Plan, have failed to discharge their duties under ERISA with respect to the Plan solely in the interests of the paticipants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries, in that such failure has prevented plaintiffs from receiving the benefits to which they are entitled under the terms of the Plan.

Plaintiffs demand specific performance of the Salaried Plan. This demand empowers this Court to act in equity. Equity presumes what should have been done was done.

■ Cyclops is obligated under the Salaried Plan to plaintiffs for full immediate pension benefits on a plant shutdown basis as of November 21, 1980, which includes medical insurance benefits. Consequently, defendants will have discharged their duties under ERISA. Cyclops' guarantee of benefits is therefore fulfilled by payment of the pension.

Acting in equity, this Court further determines, that while the pension plan put into effect solely between New Boston and plaintiffs is not at issue in this case, and while this Court has jurisdiction of plaintiffs but not *New Boston*, to do equity, as plaintiffs are now entitled to shutdown pension benefits from Cyclops, this Court must order that plaintiffs are enjoined from transfering to the New Boston Plan their Cyclops service if they accept their Cyclops pension. The service time credits of plaintiffs acquired during their employment by Cyclops have been "used up" in order for plaintiffs to meet the requirements of the Rule of 65 or 70/80 retirement benefits requirements of the Cyclops plan. Equity demands that plaintiffs, having elected to use their service credits with Cyclops in the Cyclops Salaried Plan, cannot also use them in the New Boston Plan.

This Court further finds that the common law causes of action if any remain in this case, are preempted by ERISA.

The judgment in this case is mandated by 29 U.S.C. § 1132, which commands this Court to grant appropriate relief and to redress violations.

### SUMMARY

No material facts are in issue in this case. Plaintiffs are GRANTED summary judgment on the pension counts of their Complaint. The Court adjudges that plaintiffs, if they so elect, shall be paid by defendants the pension benefits on a plant shutdown basis as of November 21, 1980, which includes medical insurance benefits.

Defendants are entitled to summary judgment on all other counts of the Complaint. Defendants are GRANTED summary judgment on the allegations of discrimination, other compensatory damages, punitive damages, fraud or misrepresentation, guarantee of pension rights, and all other remaining prayers in the Amended Complaint.

Further, plaintiffs have a choice in their claims against Cyclops. If plaintiffs apply, request and accept their plant shutdown pension from Cyclops, they lose, under the circumstances of this case, accrued years of service with Cyclops for purposes of any benefits under the New Boston pension plan, and they are enjoined from pursuing any claim against New Boston's pension plan which would be based on any years of service rendered to Cyclops. They, of course, may elect to proceed under the New Boston Plan and transfer their service credits from the Cyclops Plan to the New Boston Plan as provided in the contract of sale between Cyclops and New Boston. Any plaintiff who accepts a shutdown pension from the Cyclops plan, however, would be a new employee for purposes of the New Boston pension plan as of the date of their actual employment with New Boston.

This Court is commanded by ERISA to grant fair and appropriate relief. It is believed that this decision effects such a result.

The hearing on reasonable attorney fees and costs is set for December 23, 1985 at 10:00 A.M.

Following the award of attorney fees, if any, this matter is REMANDED to the Pension Board for the determination and award of pension benefits to plaintiffs in accordance with the Cyclops Salaried Plan and plaintiffs' election.

IT IS SO ORDERED.

### APPENDIX

May 15, 1985

Judge Spiegel

### STIPULATION OF THE PARTIES

NOW COME the parties and stipulate to the following, solely for the purpose of the determination by the Court of cross-motions for summary judgment.

1. Cyclops Corporation ("Cyclops"), a Pennsylvania corporation, is and was at all relevant times engaged in various businesses, including steel production, at several sites.

2. Prior to November 22, 1980, Cyclops owned and operated steel-making and related production facilities in the Portsmouth, Ohio, area (the "Portsmouth facility"), these being the same facilities at which Plaintiffs formerly were employed by Cyclops.

3. Cyclops operated the Portsmouth facility as part of its Empire-Detroit Steel Division, a division of Cyclops.

4. Encompassed in the Portsmouth facility as of January, 1980, were an operating coke plant, blast furnace, and open hearth furnaces. The coke plant is the same facility at which the Plaintiffs, with the exception of Frank Iovino, are now employed by New Boston Coke Corporation ("New Boston").

5. In early 1980, Cyclops determined to cease its operations at its Portsmouth facility. Cyclops attempted to sell the entire facility as a going concern. Ultimately, Cyclops shut down its open hearth and blast furnace facilities, selling the assets attributable to those facilities at a later point in time. After the shut down of the open hearth and blast furnace facilities, Cyclops continued operation of the coke plant to attempt to find a purchaser for the assets comprising the coke plant on a "going concern" basis.

6. On August 25, 1980, the coke ovens at the coke plant were put into a condition known as "hot idle," under which the temperatures of the coke ovens are maintained in order to prevent cooling which would severely damage the refractory lining of the ovens. This hot idle phase was effected in anticipation of resumption of coke production. After August 25, 1980, no coke was produced by Cyclops at the coke plant. The employment of the Plaintiffs with Cyclops was not interrupted by this condition.

7. Cyclops sold the assets of the coke plant to New Boston on November 21, 1980.

8. At the time of sale, New Boston was a wholly owned subsidiary of McLouth Steel Corporation ("McLouth"). All stock of New Boston is now held by Fred J. Dery, Trustee of New Boston, said trustee having been appointed by the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division.

9. Pursuant to the sale transaction, New Boston desired to employ individuals who were experienced in the operations of the Portsmouth facility, particularly the coke plant. In response thereto, Cyclops created a list of 28 salaried employees, including plaintiffs, which employees were designated to work for New Boston following the sale (hereinafter these employees are sometimes called the "listed employees"). New Boston also agreed to employ in excess of 200 hourly employees who had formerly worked for Cyclops at the Portsmouth facility.

10. Pursuant to this transaction, Cyclops agreed to transfer to the Trustee of the New Boston Pension Plan for Salaried Employees (the "New Boston Plan") and New Boston agreed to assume all accrued (vested and unvested) pension liabilities of the listed employees. Cyclops also agreed to transfer to the New Boston Plan Trustee assets held by the Pension Plan for Salaried Employees of Cyclops Corporation (the "Cyclops Salaried Plan") on behalf of the listed employees.

11. On February 6, 1981, the Trustee of the Cyclops Salaried Plan transferred assets in the amount of $60,521 to the bank designated in the agreement as the New Boston Plan Trustee.

12. This sum represents the portion of Cyclops Salaried Plan assets which Cyclops' actuaries, Towers, Perrin, Forster & Crosby ("TPF & C"), advised was allocable to the listed employees at the Cyclops Portsmouth facility, pursuant to the federal law governing contributions to pension plans.

13. TPF & C is in the business of rendering professional actuarial advice and is a national actuarial firm qualified with the

Internal Revenue Service ("IRS") as an enrolled actuary under ERISA.

14. The Cyclops Salaried Plan included as participants the 28 listed employees, including all of the Plaintiffs.

15. The Cyclops Salaried Plan was on November 21, 1980 and is now a qualified plan under Section 401 of the Internal Revenue Code (the "Code") and the Trust established thereunder is an exempt trust under Section 501 of the Code.

16. The Cyclops Salaried Plan provides for entitlement to a "70/80" retirement benefit and/or entitlement to a "Rule of 65" retirement benefit (these two retirement benefits are referred to collectively as "plant shutdown pensions" *) to Participants otherwise qualified whose continuous service is broken upon the occurrence of certain events set forth in the Cyclops Salaried Plan.

17. The Program of Hospital and Physicians' Services Benefits for Eligible Pensioners and Surviving Spouses—Cyclops Salaried Employees provides for receipt of certain hospital and physicians' services benefits to Participants under the Cyclops Salaried Plan who retire thereunder and are otherwise qualified.

18. It was the expressed intent of Cyclops and New Boston that the New Boston Plan would provide the same benefits as provided in the Cyclops Salaried Plan, provide identical levels of plant shutdown pension benefits, and contain the same eligibility requirements for plant shutdown pensions as does the Cyclops Salaried Plan. It was the expressed intent of Cyclops and New Boston that the New Boston Plan would grant full credit to the 28 listed employees for all of their accumulated prior service with Cyclops. After it purchased the coke plant, New Boston and the Trustee of the New Boston Plan acted as if the New Boston Plan had been formally adopted, the Trustee accepted assets transferred from the Trustee of the Cyclops Salaried Plan, New Boston made contributions to the New Boston Plan trust, and the New Boston Plan administrator received

* Such reference is for the convenience of the parties. The parties acknowledge that events

and granted applications for pension benefits under the New Boston Plan. For some reason, formal adoption of the New Boston Plan did not occur until it came to the attention of New Boston's trustee in bankruptcy that the New Boston Plan had not been formally executed. The bankruptcy trustee applied for and received from the United States Bankruptcy Court for the Eastern District of Michigan, Eastern Division, on April 20, 1984 an order authorizing the trustee to execute the New Boston Plan.

19. On October 28, 1980, a meeting was held at the Portsmouth facility for the 28 listed employees. With the exception of Plaintiff Stephen E. Sexton, who was absent, all of these employees were at that time informed of the impending sale of the coke plant assets to a third party.

20. Each of these 28 Cyclops salaried employees were told they could continue in employment with the purchasing company. Employees who asked were advised by Cyclops that if they chose not to continue said employment they would be eligible to receive deferred vested pensions under the Cyclops Salaried Plan upon attainment of their applicable retirement ages, presuming they met the other applicable eligibility requirements. Employees who asked were advised by Cyclops that the sale would not trigger entitlement to plant shutdown pensions.

21. On November 21, 1980, Plaintiffs' employment with Cyclops ceased and, without work interruption, they became employees of New Boston immediately thereafter.

22. Following the November 21, 1980 sale, New Boston has owned and operated the coke plant which remains in operation as of this date.

23. New Boston has made contributions to the New Boston Plan in full compliance with IRS funding regulations for the 1982 and 1983 Plan years. Funding for the 1984 Plan year is not due until September of 1985. New Boston obtained a waiver from

other than plant shutdowns may trigger entitlement to such pensions.

the IRS of minimum funding requirements for the 1981 Plan year, and it has complied with the payment schedule required to be maintained under this waiver to the present time.

24. The Plaintiffs, except for Frank Iovino, who retired, continue to be employed by New Boston.

25. Plaintiffs Bradshaw, Darnell, Iovino, Phipps, Vanderpool, Wilson and Wright were foremen at the coke plant when employed by Cyclops and continued in the same positions with the same duties when employed by New Boston. Plaintiffs Sexton, Elrod and Maynard were employed by Cyclops as Superintendent, Assistant Superintendent, Mobile Equipment Repair Foreman, respectively, in the Yard and Transportation Department; Plaintiffs Price and Varhola were employed by Cyclops in the positions of Maintenance Foreman and Manager of Industrial Relations, respectively. Each of these Plaintiffs continued to perform similar duties with New Boston.

26. Cyclops employees whose employment with Cyclops was terminated because of the shutdown of the open hearth and the blast furnace operations (see Paragraph 5 of this Stipulation) were granted plant shutdown pensions.

27. Cyclops has denied the Plaintiffs' claims for plant shutdown pensions under the Cyclops Salaried Plan.

28. The Plaintiffs have exhausted all administrative remedies precedent to the filing of this action.

29. Plaintiff Frank Iovino applied for on February 28, 1984 and was awarded on March 1, 1984 a "62/15" pension under the New Boston Plan. In order to receive this pension, Iovino met the same eligibility requirements (i.e., 62 years of age and 15 years of service) as would have been required under the Cyclops Salaried Plan for a "62/15" pension and received credit for all his years of service for Cyclops. The amount of pension which Iovino has received under the New Boston Plan is computed by application of a formula identical to that which would have been applicable had he continued to be employed by Cyclops until said retirement date under the Cyclops Salaried Plan.

30. Plaintiff Iovino has received and continues to receive full payments of his "62/15" pension under the New Boston Plan.

31. No Plaintiff has ever had a pension application under the New Boston Plan denied.

32. No Plaintiff has ever made a request or claim from or against the Pension Benefit Guarantee Corporation ("PBGC").

33. William D. Dickey, Robert A. Kushner, and Donald E. Mitchell are and were, at all relevant times, members of the Pension Board for the Cyclops Salaried Plan and the Pension Board is and was the plan's plan administrator.

34. At all relevant times, William D. Dickey was also a Senior Vice President and Treasurer, Robert A. Kushner was also a Vice President and General Counsel, and Donald E. Mitchell was also a Vice President and Controller of Cyclops.

35. As of November 22, 1980, the Plaintiffs, listed below, were of the indicated ages and had the indicated years and months of continuous service for purposes of the Cyclops Salaried plan.

| NAME | DATE OF BIRTH | NEAREST BIRTH DATE AGE AS OF 11/22/80 | CONTINUOUS SERVICE AS OF 10/31/80 START DATE | YEARS | MONTHS |
|------|------|------|------|------|------|
| Albert R. Varhola | 6–26–24 | 56 | 1–17–55 | 25 | 9 |
| Joseph Bradshaw | 4–24–33 | 47 | 4–25–55 | 25 | 6 |
| Curtis Darnell | 11–28–37 | 43 | 2–06–56 | 24 | 9 |
| Carlos E. Elrod | 2–06–26 | 54 | 4–12–45 | 35 | 7 |
| Frank P. Iovino | 8–11–21 | 59 | 10–01–65 | 15 | 1 |
| E. Jack Maynard | 7–17–33 | 47 | 3–24–55 | 25 | 7 |
| Curtis W. Phipps | 11–13–25 | 55 | 3–16–65 | 15 | 8 |
| Earl J. Price | 11–17–25 | 55 | 10–25–65 | 15 | 0 |
| Stephen E. Sexton | 10–15–29 | 51 | 4–17–55 | 25 | 6 |
| Wm. Vanderpool | 2–01–35 | 45 | 4–22–55 | 25 | 6 |
| Leslie L. Wilson | 12–27–31 | 49 | 1–24–51 | 29 | 9 |
| Claude Wright | 12–12–32 | 48 | 11–09–59 | 21 | 0 |

Respectfully submitted,
ISAAC, BRANT, LEDMAN & BECKER
By /s/ Richard C. Graham
Richard C. Graham
By /s/ Donald L. Anspaugh
Donald L. Anspaugh
Trial Attorneys for Plaintiffs
KIRKPATRICK & LOCKHART
By /s/ Donald E. Seymour
Donald E. Seymour
Trial Attorneys for Defendants