**UNITED STEELWORKERS 2116, et al., Plaintiffs,**

v.

**CYCLOPS CORPORATION, d/b/a Empire-Detroit Steel Division, Defendant.**

No. C–1–83–1051.

United States District Court, S.D. Ohio, W.D.

Jan. 20, 1987.

William K. Shaw, Jr., Portsmouth, Ohio, for plaintiffs.

Daniel O. Berger, Cincinnati, Ohio, for defendant.

## ORDER

HERMAN JACOB WEBER, District Judge.

This matter is before the Court upon Motions for Summary Judgment filed by both plaintiffs and defendant (doc. nos. 18 and 19). In addition, plaintiffs have filed a Motion to Strike Defendant's Supplemental Affidavits (doc. no. 33).

The parties have entered into stipulations concerning this case (doc. no. 16). The parties have stipulated that Cyclops Corporation ("Cyclops"), a Pennsylvania corporation, is and was at all relevant times, engaged in various businesses, including steel production at several sites. Prior to November 22, 1980, Cyclops owned and operated steel-making and related production facilities in the Portsmouth, Ohio area ("the Portsmouth facility"), these being the same facilities at which plaintiffs formerly were employed by Cyclops. Cyclops operated the Portsmouth facility as part of its Empire-Detroit Steel Division, a division of Cyclops. Encompassed in the Portsmouth facility as of January, 1980, were an operating coke plant, blast furnace and open-hearth furnaces. The coke plant is the same facility at which the named individual plaintiffs are or were employed by New Boston Coke Corporation ("New Boston").

United Steelworkers of America ("International") was, since at least the 1940's, the collective bargaining representative for hourly paid production and maintenance, clerical, technical and plant protection employees who were employed by Cyclops or its predecessors at its Portsmouth facility. Local Union #2116 of the United Steelworkers of America ("Local") is a subdivision of the International. The International continues to be the collective bargaining representative of all the Cyclops former hourly employees who became employed as hourly employees by New Boston. The International and Cyclops, or its predeces-

sors since the 1940's, have entered into a series of collective bargaining agreements which, since the 1950's, have included pension provisions.

In effect from August 1, 1977 through July 31, 1980 were collective bargaining agreements for the production and maintenance employees, the clerical and technical employees and the plant protection employees. Also in effect for that same period was a pension agreement which was to expire on December 31, 1980.

On July 24, 1980, the parties entered into an agreement effective August 1, 1980 ("the extension agreement"), which extended the 1977 agreements and pension plan until July 31, 1981 when they expired.

In early 1980, Cyclops determined to cease its operations at its Portsmouth facility. Cyclops attempted to sell the entire facility as a going concern. Ultimately, Cyclops shut down its open-hearth and blast furnace facilities, selling the assets attributable to these facilities. After the shut down of the open-hearth and blast furnace, Cyclops continued operation of the coke plant and attempted to find a purchaser for the assets comprising the coke plant on a going concern basis.

On August 25, 1980, the coke ovens at the coke plant were put into a condition known as "hot idle" under which the temperatures of the coke ovens were maintained in order to prevent cooling which would severely damage the refractory linings of the ovens. This hot idle phase was effected in anticipation of resumption of coke production. The employment of the plaintiffs with Cyclops was not interrupted by this condition.

Cyclops sold the assets of the coke plant to New Boston on November 21, 1980. At the time of the sale, New Boston was a wholly-owned subsidiary of McLouth Steel Corporation ("McLouth"). All stock of New Boston is now held by Fred J. Dery, Trustee of New Boston, who was appointed by the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division.

Pursuant to the sale transaction, New Boston desired to employ individuals who were experienced in the operations of the Portsmouth facility, particularly the coke plant. In response, Cyclops created a list which eventually included 227 hourly employees, including plaintiffs, who were designated to work for New Boston following the sale. (Hereinafter these employees are sometimes called the "listed employees").

In anticipation of the sale of the coke works to New Boston, the International and New Boston entered into negotiations commencing in September of 1980 for the purpose of negotiating a collective bargaining agreement and a pension agreement between the parties which was to become effective with the purchase of the coke works by New Boston from Cyclops and which was to cover all hourly employees hired by New Boston, including the listed employees. The negotiations were successful and on November 12, 1980, the International and New Boston entered into a collective bargaining agreement. A pension agreement was separately executed in March, 1981, effective November 21, 1980. The collective bargaining agreement and pension agreement were in all relevant respects identical to those which had existed between Cyclops and the International. It was the expressed intent of the International and New Boston that the New Boston plan would provide the same terms and conditions as provided in the pension plan negotiated between Cyclops and the International for hourly employees at Portsmouth ("the Cyclops Hourly Plan"), provide identical levels of pension benefits and contain the same eligibility requirements for pensions as did the Cyclops Hourly Plan. It was the expressed intent of the International and New Boston that New Boston would grant full credit to the listed employees for all of their accumulated prior service with Cyclops. Plaintiffs agreed to accept and use their accumulated prior service credits with Cyclops in the New Boston Pension Plan.

Pursuant to the sale transaction, New Boston agreed to assume all accrued (vested and unvested) pension liabilities of the

listed employees. In consideration therefor, Cyclops agreed to transfer to the New Boston Plan Trustee, assets held by the Cyclops Hourly Plan on behalf of the listed employees.

The International negotiated exclusively with New Boston in all these matters. The International did not negotiate or enter into any agreement with Cyclops with respect to the effects of the sale to New Boston or the transfer of pension plan assets and liabilities to New Boston from Cyclops.

On February 6, 1981, the Trustee of the Cyclops Hourly Plan transferred assets in the amount of $168,380, plus interest since October 31, 1980, to the bank designated in the agreement as the New Boston Plan Trustee. This sum represents the portion of Cyclops Hourly Plan assets which Cyclops actuaries, Towers, Perrin, Forster and Crosby ("TPF & C"), advised was allocable to the listed employees at the Cyclops Portsmouth facility pursuant to the federal law governing contributions to pension plans. TPF & C had originally calculated the amount necessary as $327,491, but due to changes in the identities of the listed employees, new calculations were made. TPF & C is in the business of rendering professional actuarial advice and is a national actuarial firm qualified with the Internal Revenue Service ("IRS") as an enrolled actuary under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

The Cyclops Hourly Plan included as participants the 227 listed employees, including the named plaintiffs. The Cyclops Hourly Plan was on November 21, 1980 and is now a qualified plan under § 401 of the Internal Revenue Code ("the Code") and the trust established thereunder is an exempt trust under § 501 of the Code.

After it purchased the coke plant, New Boston and the trustee of the New Boston plant accepted assets transferred from the trustee of the Cyclops Hourly Plan. New Boston made contributions to the New Boston Plan trust and the New Boston Plan administrator received and granted applications for pension benefits under the New Boston Plan. All plaintiffs accepted and were granted full credit for their service with Cyclops by the New Boston Plan.

Prior to November 21, 1980, the listed Cyclops employees were told they would continue in employment with the purchasing company, New Boston. After November 21, 1980, none of the 227 listed employees worked for Cyclops. Immediately thereafter, at least 222 of those listed employees acquired the same employment rights with New Boston as they had possessed with Cyclops. The parties to the litigation do not stipulate as to the employment status with New Boston of five listed employees; Randolph D. Sparks, Charles Duncan, Isaac R. Parker, Jack E. Besco and Juanita B. Jarrells.

Since the November 21, 1980 sale, New Boston has owned and operated the coke plant which remains in operation as of this date. New Boston has made contributions to the New Boston Plan in full compliance with IRS funding regulations for 1982 and 1983 plan years. Funding for the 1984 plan year is not due until September of 1985. New Boston obtained a waiver from the IRS of minimum funding requirements for the 1981 plan year and it has complied with the payment schedule required to be maintained under this waiver to the present time.

All listed employees, including the named plaintiffs, except for those who elected to retire or were not required to work, continued to be employed by New Boston and each of these employees continued to perform similar duties with New Boston. Further, all listed employees who have applied for pension from New Boston have received such pension with full credit for their Cyclops service with the sole exception of Charles Rose. The parties have agreed that the factual circumstances of the denial of Mr. Rose's pension involved a factual dispute between Mr. Rose and New Boston, which is not at issue in this litigation.

Finally, no plaintiff or other listed employee has ever made a request or claim

from or against the Pension Benefit Guarantee Corporation ("PBGC").

## I.

The Court will first consider plaintiffs' Motion to Strike (doc. no. 33). Plaintiffs' request the striking from the files of the Court 1) the affidavit of Robert J. Tate; 2) the first supplemental affidavit of Robert J. Tate; 3) defendant's supplemental affidavit in opposition to plaintiffs' supplemental affidavits; and 4) the second supplemental affidavit of Robert J. Tate. Plaintiffs further maintain that arguments propounded by defendant in 1) defendant's Brief Contra plaintiffs' Motion for Summary Judgment, 2) defendant's Reply to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment and, 3) based upon the referenced affidavits and documents, be stricken from the record of this proceeding. Finally, plaintiffs move the Court pursuant to Fed.R. Civ.P. 56(g) for an order granting expenses and attorneys' fees related to the defense of the affidavit and arguments propounded by defendant based upon the alleged bad faith affidavit of Robert J. Tate.

The amended plan of reorganization attached to defendant's Motion for Summary Judgment (doc. no. 19) will not be considered by the Court. The amended plan of reorganization is not referenced by any affidavit nor is there any indication that it is a sworn or certified copy as required by Fed.R.Civ.P. 56(e).

In all other respects, plaintiffs' Motion to Strike is DENIED. Upon consideration, the Court concludes that the affidavits and copies of materials attached thereto conform to the requirements of Fed.R.Civ.P. 56(e) and that in any event, the pertinent documents for disposition of this summary judgment have been stipulated to between the parties, or have been supplied by plaintiffs.

Likewise, plaintiffs' requests under Fed. R.Civ.P. 56(g) for an order granting expenses and attorneys' fees related to the defense of the affidavit and arguments propounded by defendant are DENIED.

## II.

The Court shall next consider plaintiffs' Motion for Summary Judgment (doc. no. 21).

Plaintiffs maintain that defendant Cyclops Corporation unilaterally modified the terms of the collective bargaining agreements in question and the pension agreement by transferring pension assets and liabilities to New Boston. Plaintiff further maintains that defendant modified the agreements by refusing to provide other services and terms and conditions of employment for 227 former employees who received or were offered jobs with New Boston Coke. Plaintiffs conclude that the actions of defendant were in violation of the collective bargaining agreement and that defendant's actions were contrary to the provisions of ERISA.

Pursuant to a Stipulation of Dismissal entered into between the parties (doc. no. 31), the class action allegations raised in the Complaint have been dismissed. Consequently, this case is not a class action, nor is this issue any longer viable in the case.

In its first argument, plaintiffs maintain that the pension agreement entered into by the parties was a collective bargaining agreement within the meaning of § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Both sides agree and the Court concurs that the pension agreement was a collective bargaining agreement.

Plaintiffs next argue that the collective bargaining agreement was violated by the transfer of pension assets and liabilities from Cyclops to the New Boston pension plan. Plaintiffs assert that all of the collective bargaining agreements bound defendant Cyclops Corporation and no other entity. Plaintiffs further maintain that they did not contemplate a suspension of Cyclops' rights and duties under the agreement or a substitution of parties without their consent, which they have not given.

The pension agreement entered into between Cyclops and plaintiffs in issue in this litigation is referred to by the parties as Exhibit E. Paragraph 1.3 of the pension agreement provides in pertinent part that the benefits shall be provided by the company or cause to be provided by the company for the participants.

Paragraph 8.1 of the pension plan states that for the purpose of supplying the benefits herein provided, the company may establish or cause to be established a trust or trusts or may utilize any existing trust or trusts heretofore established by or on behalf of the company. It also states that the company is free to determine the manner and means of making provision for funding and paying the benefits set forth in the agreement.

Section 9 of the plan, General Provisions, provides in pertinent part as follows:

9.1 *Administration*

The Company, through its designated management representatives, shall be responsible for the administration of the benefits set forth in this Agreement.

9.2 *Continuation of Benefits*

Any benefit properly payable pursuant to this Agreement shall continue to be payable, notwithstanding the termination of expiration of this Agreement.

9.3 *Nonalienation*

No benefit payable under this Agreement shall be subject in any way to alienation, sale, transfer, assignment, pledge, attachment, garnishment, execution, or encumbrance of any kind, and any attempt to accomplish the same shall be void ...

.    .    .    .    .

9.5 *Rights of Participants*

Neither any participant prior to his retirement under conditions of eligibility for pension benefits nor any surviving spouse prior to eligibility for a surviving spouse's benefit shall have any right or interest in or to any portion of any funds which may be paid into any pension trust or trusts heretofore or hereafter established for the purpose of paying pensions and no participant, co-pensioner or surviving spouse shall have any right to pension benefits except to the extent provided in this Agreement. Employment rights shall not be affected by reason of this Agreement.

Plaintiffs argue that the language of the collective bargaining agreements implicitly requires that Cyclops provide the pension benefits set forth therein. The Court agrees with that analysis. As will be further delineated, however, Cyclops has provided the pension benefits it is required to provide under the terms of the pension agreement.

■ The enforcement and interpretation of collective bargaining agreements under 29 U.S.C. § 185 is governed by substantive federal law. Traditional rules for contractual interpretation, however, are applied as long as their application is consistent with federal labor policies. *International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. Yard-Man, Incorp.,* 716 F.2d 1476, 1479 (6th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 634 (1984).

■ The case cited to this Court by plaintiffs, *Murphy v. Heppenstall Co.,* 635 F.2d 233 (3d Cir.1980), *cert. denied,* 454 U.S. 1142, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982), involves a factual situation and claim different from that in issue in this case. The employees in *Murphy* sought directly from the employer the difference between pension payments guaranteed by the PBGC, and those provided in the pension agreement. The *Murphy* plaintiffs are 16 retired employees seeking an actual award of pension benefits as provided for in the pension agreement over those guaranteed by the PBGC. Under the terms of the contract in *Murphy,* the Court held that the employer had a continuing direct liability for post-termination pension payments as the contract was never meant to divest retirees of their pension payments. Here, pursuant to paragraph 9.5 of the pension agreement, the agreement provides that neither any participant prior to his

retirement under conditions of eligibility for pension benefits nor any surviving spouse prior to eligibility for a surviving spouse's benefit shall have any right or interest in or to any portion of any funds which may be paid into any pension trust or trusts established. All vested employees who have retired have received their full pensions, having been given full credit by New Boston for their accumulated prior service with Cyclops.

Plaintiffs maintain that pursuant to the pension agreement, the parties agreed that Cyclops would be liable for the benefits required. Plaintiffs maintain that they did not consent to a modification of this arrangement by Cyclops and that no novation took place to make New Boston responsible for the pension instead of Cyclops.

The Court agrees that plaintiffs did not consent to an amendment of their pension agreement with Cyclops, however, the undisputed facts in this case reveal that plaintiffs decided to continue employment with New Boston rather than retire when their jobs with Cyclops were no longer available. Plaintiffs also agreed to accept with New Boston their years of service under the Cyclops plan for computation of their pension rights pursuant to the new pension plan.

To fulfill its obligation under the pension plan, Cyclops, through the Trustee of the Cyclops Hourly Plan, transferred assets totalling $168,380, plus interest since October 31, 1980, to a bank designated as the New Boston Plan Trustee. The $168,380 represents the portion of Cyclops Hourly Plan assets which Cyclops actuaries, TPF & C, advised was allocable to the listed employees at the Cyclops Portsmouth facility pursuant to the federal law governing contributions to pension plans. The evidence is undisputed and reasonable minds can only conclude that the $168,380 was Cyclops obligation under its pension plan agreement with plaintiffs to the listed employees at the Cyclops Portsmouth facility for the payment of future pension obligations which had arisen from the employees' years of service with Cyclops. This pay-

ment of over $150,000 is the "safety net" requested by plaintiffs and required by federal law. Compare *Sutton v. Weirton Steel Division of National Steel Corp.,* 567 F.Supp. 1184 (N.D.W.Va.), *aff'd.,* 724 F.2d 406 (4th Cir.1983), *cert. denied,* 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984).

Cyclops has provided benefits and has caused benefits to be provided to plaintiffs by its payment to the New Boston Plan of $168,380, the allocable amount payable to the listed employees at the Cyclops Portsmouth facility who now work for New Boston. Next, Cyclops has designated New Boston as its representative for the administration of Cyclops benefits earned. Further, under paragraph 9.2 of the pension agreement, the years of service earned by plaintiffs during their employment at Cyclops are credited for the eligibility requirements for pensions in the New Boston Plan. The New Boston Plan grants full faith to listed employees for all of their accumulated prior service with Cyclops. Finally, pursuant to paragraph 9.5 of the pension agreement between Cyclops and plaintiffs, no participant nor any surviving spouse prior to the retirement has any right or interest to any portion of any funds which may be paid into the pension trust or trusts established. Thus, until retirement of each individual plaintiff, that plaintiff does not have a right or interest in any portion of the funds paid into the pension trust or trusts established by Cyclops and by New Boston.

As to defendant's contention that a novation has taken place, reasonable minds can only conclude from the undisputed material facts, that plaintiffs did not agree to a substituted contract. Rather, the evidence leads only to the conclusion that plaintiffs did not discharge Cyclops from its original duty under the pension plan, but added New Boston to be responsible for pension benefits earned for plaintiffs' efforts at New Boston, when plaintiffs determined to continue with employment at New Boston instead of retiring from Cyclops. Thus, both Cyclops and New Boston owe a duty

to plaintiffs, however, Cyclops has fulfilled its duty to plaintiffs by the payment of its allocable contribution to the New Boston Plan and its agreement with New Boston.

Paragraph 3.8 of the New Boston Plan reflects that a participant in the plan shall have the pension reduced by any other pension received to which the Company shall have directly or indirectly contributed. This paragraph has no application to this action, as the pension to be received by plaintiffs, when they retire, will be one pension, determined from years of service with both Cyclops and New Boston. Cyclops has paid its allocable portion of the pension, with New Boston responsible for the remainder. That portion paid by Cyclops has not been directly or indirectly contributed to by New Boston.

Lastly, Cyclops had no duty to negotiate with plaintiffs concerning the sale of the coke works. Cyclops did not change its obligations or attempt to modify the pension plan with the International. Cyclops still owes those obligations, but by paying funds to the New Boston Plan in the amount of $168,380, it has met the obligation.

Consequently, the agreement of the International and its members to the transfer of employment from Cyclops to New Boston and the payment by Cyclops to the New Boston Plan of an amount determined to be allocable to the listed employees at the Cyclops facility for the years of service by the employees at Cyclops, fulfills Cyclops' obligation under its pension agreement with plaintiffs. Therefore, plaintiffs first argument that the pension agreement was violated by the transfer of pension assets and liabilities to the New Boston Coke pension plan is DENIED.

■ The Court notes that defendant's argument that this Court lacks subject matter jurisdiction since plaintiffs have not stated an actual case or controversy of a justiciable nature pursuant to Article III of the Constitution is not well taken. There is a case or controversy as to whether Cyclops has violated its obligations under the pension plan it entered into with plaintiffs.

There is an actual controversy as to whether Cyclops fulfilled its obligations under the contract and whether Cyclops' activities in relation to New Boston and plaintiffs was proper under the contract and ERISA. The controversy is definite, concrete and touches the legal relations of the parties having adverse legal interests. *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). The Court agrees with defendant, however, that speculation as to future events is unwarranted. Thus, this Court is not concerned with any possible demise of New Boston and the related determinations and payments made by the PBGC.

■ The Court will next consider whether Cyclops has violated ERISA and its fiduciary duties under ERISA. There is no argument and the parties agree that Cyclops, through its pension board, is a fiduciary within the meaning of ERISA. Plaintiffs first maintain that Cyclops has violated the fiduciary standards of ERISA by transferring plan liabilities and assets to the New Boston Coke Corporation. According to plaintiffs, Cyclops has destroyed vested and accrued benefits for the listed employees and has therefore violated the fiduciary standard section of ERISA, § 404, as well as conducting prohibited transactions in violation of § 406 and 29 U.S.C. § 1106.

According to plaintiffs, an examination of the purchase agreement entered into between Cyclops and the McLouth shows that McLough will pay the sum of $6 million dollars over a five-year period and assume the liabilities of the pension plan for both salaried and hourly employees in exchange for the assets of the coke-making facility. In plaintiffs' view, the pension liabilities assumed by McLouth are equal to if not greater than the cash price paid by McLouth for the plant assets.

Title 29 United States Code § 1104(a) states in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclu-

sive purpose of 1) providing benefits to participants and their beneficiaries and 2) defraying reasonable expenses of administering the plan. Part (B) of paragraph (a) also provides that the fiduciary shall discharge his duties with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters, would use in the conduct of an enterprise of a like character with like aims.

The purchase agreement entered into between Cyclops, McLouth and New Boston, a wholly-owned subsidiary of McLouth, provides in pertinent part pursuant to paragraph 5, Employee Plans and Arrangements, paragraph (C) that New Boston shall assume all liability and expense for the accrued pensions (vested and unvested) of all such persons calculated as of the closing date to the closing date under all the terms and provisions of the applicable hourly and salaried pension plans of Cyclops as in effect on the closing date. New Boston also assumed all future obligations to make the required contributions to satisfy the minimum funding standards of the Employee Retirement Income Security Act, ERISA, with respect to said assumed liability without regard to the form of the pension plan implemented by New Boston with regard to such employees. At the closing, both the agreements of plan transfer and assumption for each of the Cyclops pension plans as attached to the purchase agreement were executed. New Boston also granted each employee full credit in the New Boston Pension Plan for eligibility and vesting purposes for his continuous service in the Cyclops pension plan which credit plaintiffs have accepted. Cyclops agreed to cause the trustees of its pension plans to assign and transfer to the trustee or trustees of the New Boston pension Plan the assets properly allocable under ERISA to the transferred liabilities as determined by the Cyclops enrolled actuary in accordance with law. Finally, the agreement provided in pertinent part that all assets transferred should be in the form of cash or cash equivalents and should be made as

soon as possible after the expiration of the 30-day notice period established under ERISA.

Under the agreement therefore, New Boston gave full credit for the continuous service of plaintiffs accrued through their employment in Cyclops. Further, Cyclops agreed to transfer all assets properly allocable under ERISA to the transferred liabilities as determined by the Cyclops enrolled actuary in accordance with law. Cyclops consequently, for its accrued liabilities to the pension plan, made payment to New Boston for those liabilities as determined in accordance with law. The Court determines that based on the undisputed material evidence in this case, reasonable minds can only conclude that the amount transferred by Cyclops to New Boston was equal to its accrued liabilities under the pension plan to plaintiffs and was in accordance with law. Cyclops, therefore, has not as plaintiffs allege, destroyed any vested or accrued benefits for the listed employees.

■ The Court concludes that Cyclops has not violated its fiduciary duties under 29 U.S.C. § 1104. There is no evidence in the record to support a finding that Cyclops sold its coke facilities to avoid any unfunded pension obligations to its employees or to plaintiffs. Rather, Cyclops transferred to New Boston an amount equal to its liabilities allocable to it under ERISA.

Plaintiffs cite this Court to the decision of the United States Court of Appeals for the Fourth Circuit in *Sutton*, 724 F.2d at 410. In this case, as in *Sutton*, the selling company did not attempt to avoid payments through the sale of its coke works division.

■ Plaintiffs also contend that defendant has run afoul of 29 U.S.C. § 1103(c) and (d) in that Cyclops has failed to act solely in the interest of the participants and beneficiaries and has used assets of the plan for its benefit and not for the benefit of recipients of the pension agreement.

The Court concludes that the assets of the pension fund amassed as a result of the

agreement entered into between Cyclops and International were not inured for the benefit of Cyclops. Rather, Cyclops transferred to New Boston the assets properly allocable under ERISA for the transferred liabilities. Further, the transferred employees retained all rights and full credit for all of their accumulated prior service with Cyclops.

The Court also determines that defendant as a fiduciary has acted in accordance with the plan documents. Plaintiffs specifically refer to paragraph 9.1 of the Pension Agreement between Cyclops and the International. Paragraph 9.1 in essence provides that the company, through its designated management representatives, shall be responsible for the administration of the benefits set forth in the agreement.

The activities of Cyclops in determining to sell its coke facility, transferring its pension plan and the assets properly allocable under ERISA to the transferred liabilities, and providing full credit to the listed employees with New Boston for all their accumulated prior service with Cyclops, reflects that Cyclops has designated New Boston as the representative for the continuation of the pension plan. In all respects, Cyclops has complied with the terms of its pension plan entered into with the International.

Finally, under this section of plaintiffs' argument, plaintiffs maintain that no interest of the participants of the plan was or could be served by a transfer of assets or liabilities. The Court disagrees. As the Court noted in its decision in *Varhola v. Cyclops Corp.*, 657 F.Supp. 595 (S.D.Ohio 1985), the Court compliments Cyclops on its community involvement and spirit in its attempt to keep jobs and its coke works in operation in Portsmouth. The Court must disagree therefore, with plaintiffs' assertion that no interest of the participants was or could be served by a transfer of assets or liabilities. In this case, Cyclops attempted to sell the coke works as a going concern and was successful. It was also successful in securing employment for these individual

plaintiffs with a concurrent continuation in the accrual of pension rights of the plaintiffs pursuant to an identical pension plan with New Boston to that held by the plaintiffs with Cyclops. Cyclops has provided or caused to be provided a trust to be utilized for the payment of the benefits set forth in the pension agreements. Finally, the International and New Boston entered into a pension agreement which covers all the plaintiffs.

Reasonable minds can only conclude based on the evidence in this case that the assets of the pension plan did not inure to the benefit of Cyclops and were held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

■ Plaintiffs lastly maintain that Cyclops violated the prohibited transaction section of ERISA by transferring pension plan assets and liabilities.

Title 29 United States Code § 1106 provides in pertinent part as follows:

(a) Transactions between plan and party in interest. Except as provided in Section 408 [29 USCS § 1108]:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

(A) sale or exchange, or leasing, of any property between the plan and a party in interest;

(B) lending of money or other extension of credit between the plan and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; or

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 407(a) [29 USCS § 1107(a)].

(2) No fiduciary who has authority or discretion to control or manage the assets of a plan shall permit the plan to hold any employer security or employer real property if he knows or should know that holding such security or real property violates section 407(a) [29 USCS § 1107(a)].

(b) Transactions between plan and fiduciary. A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

Plaintiffs contend that Cyclops violated paragraph (a)(1)(A) and (D) and paragraph (b)(1), (2) and (3). According to plaintiffs, Cyclops illegally bargained with McLouth for the sale of its coke facilities and blatantly used the plan assets as consideration for the sale.

The Court concludes that there are no material facts in issue and reasonable minds can only conclude that Cyclops did not enter into any prohibited transactions under 29 U.S.C. § 1106. Cyclops did not engage in any sale, exchange or leasing of any property between the plan and a party in interest, nor did it transfer for the benefit of a party in interest any assets of the plan. Further, Cyclops did not deal with the assets of the plan in its own interest or for its own account and did not violate the second and third parts of paragraph (b) of § 1106.

Section 1058 of Title 29 provides that a pension may not merge or consolidate with or transfer its assets or liabilities to any other plan after the date of the enactment of the Act (September 2, 1974) unless each participant in the plan would, (if the plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation or transfer (if the plan had then terminated).

Cyclops, under 29 U.S.C. § 1058, transferred its plan assets to New Boston. The New Boston Plan provides the same terms and conditions as provided in the pension plan negotiated between Cyclops and the International for hourly employees at Portsmouth, provides identical levels of pension benefits and retains the eligibility requirements for pensions as did the Cyclops Hourly Plan. Further, the New Boston Plan grants full credit to the listed employees for all of their accumulated prior service with Cyclops. See also 29 U.S.C. § 1108(b).

Reasonable minds can only conclude in this case that each participant in the New Boston Plan receives a benefit immediately after the merger which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger from Cyclops. Further, Cyclops has delivered to New Boston assets properly allocable under ERISA to the transferred liabilities as determined by the Cyclops enrolled actuary in accordance with law.

Congress enacted ERISA in order to protect pensions and other delayed compensation for the benefit of employees. The party-in-interest prohibitions act to insure arm's-length transactions by fiduciaries of funds subject to ERISA. *M & R Investment Co. v. Fitzsimmons*, 685 F.2d 283 (9th Cir.1982).

The undisputed evidence is that Cyclops and McLouth were not parties in interest. The two companies were totally unrelated, and therefore the sale of the coke works and the transfer of pension funds and liabilities was arms-length. It is also only good business judgment that McLough, while purchasing the coke facilities for a sum, did not and was not willing to assume

any pension liabilities from Cyclops that Cyclops did not fund.

While there is an issue as to whether amendment number three is an actual amendment to the Cyclops Hourly Plan effective July 1, 1977 as the affidavits are in dispute on this matter, this issue is not a material fact in issue because of the foregoing discussion.

In all respects, therefore, plaintiffs' request for summary judgment is DENIED.

### III.

■ Defendant has also moved the Court for summary judgment (doc. no. 19). Defendant first argues that plaintiffs' allegations that Cyclops violated its duty to bargain constitute allegations of unfair labor practices which are not within this Court's subject matter jurisdiction.

The Court concludes, as plaintiffs argue and as previously stated, that the issue in this case involves in part whether a collective bargaining agreement and pension agreement have been breached and, therefore, this Court does have jurisdiction. Further, this Court has subject matter jurisdiction over the ERISA claims.

Incorporating the discussion by the Court previously made with regard to plaintiff's Motion for Summary Judgment, this Court concludes that there are no material facts in issue and defendant Cyclops Corporation is entitled to judgment as a matter of law. Cyclops has not violated the pension agreement entered into between the parties nor is the transfer of the Cyclops salaried plan assets and liabilities to the New Boston Plan Trustee actionable under ERISA as a prohibited transaction or a violation of defendant's fiduciary duties.

This Court agrees with the District Court for the Northern District of West Virginia in *Dhayer v. Weirton Steel Division of National Steel Corp.*, 571 F.Supp. 316, 326–27 (N.D.W.Va.), *aff'd.*, 724 F.2d 406 (4th Cir.1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984), which explained

"With regard to the fear of some workers that pension rights 'earned' under employment with a new company may not be as secure as those 'earned' under National Steel, the Court believes that ERISA cannot be perceived as requiring federal courts to weigh the potential success of one company as opposed to another when the divestiture of a plant through sale to another entity is proposed. Plaintiffs' search for security of pension benefits to be earned (to become vested or accrued) at some point in the future is something that is not contemplated by ERISA (beyond insuring certain minimal benefits protected by the Pension Benefit Guaranty Corp.)"

Thus, pension benefits to be earned under New Boston are New Boston's liability under its separate pension plan with the plaintiffs. All pension benefits earned by plaintiffs under Cyclops, however, are the liability of Cyclops and pursuant to that liability, Cyclops transferred $168,380 plus interest since October 31, 1980 to the bank designated in the agreement as the New Boston Plan Trustee (representing the portion of Cyclops Hourly Plan assets allocable to the listed employees at the Cyclops Portsmouth facility pursuant to the federal law governing contributions to pension plans).

■ Defendant also maintains that plaintiffs' claim for punitive damage under ERISA fails as a matter of law. Because this Court concludes that defendant has not violated ERISA, the issue of punitive damages under ERISA is DENIED.

The Court concludes that defendant has complied with the requirements of ERISA and the provisions of its pension contract with plaintiffs. Plaintiffs have continued in their jobs at the coke works, although their employer has changed. In addition, plaintiffs' pensions and pension rights are the same now as before the sale of the coke works from Cyclops to New Boston. Plaintiffs retained credit for all accumulated prior service, and Cyclops paid to New Boston a large sum of money representing the portion of Cyclops Hourly Plan assets allo-

cable to the listed employees pursuant to federal law. The plaintiffs have entered into a contract with New Boston in which they accept and agree their years of service credit with Cyclops will inure to their benefit in the New Boston Plan.

Justice has been done in this action, as both parties have fulfilled their obligations and received the benefits of the sale of the coke plant. For its part, defendant has sold the coke plant. Plaintiffs retained their jobs as well as their pension rights built over a career of service with Cyclops. Defendant has paid its share of the pension obligations to New Boston, and New Boston has received experienced and valued workers guaranteeing them the same pension as they had with Cyclops. Fairness dictates that plaintiffs not be able to recover twice for the years of service accumulated through employment with Cyclops.

The actions of defendant with regard to plaintiffs and their pension agreement was therefore fair, equitable and just.

The Court also notes that the facts of this case are different than in *Varhola v. Cyclops Corp.* In *Varhola,* the Court was concerned with the provisions of a salary plan. No attempt was made in *Varhola* to secure the voluntary agreement of the salaried employees to transfer to New Boston. Rather, they were forced to transfer or face economic disaster. Plaintiffs in *Varhola,* the Court determined, were entitled to permanent shutdown pensions with Cyclops under the specific terms of that Salary Pension Plan. The Court stated, however, that plaintiffs were enjoined from transferring to the New Boston Plan their Cyclops service if they accept their Cyclops pension.

In this case, by contrast, plaintiffs, through their union, negotiated with the new employer, New Boston, concerning a new collective bargaining agreement and pension plan. Additionally, the union previously negotiated a one year extension of the Cyclops agreements. Thus, plaintiffs voluntarily entered into a new pension plan with New Boston essentially identical to the Cyclops Plan. Additionally, this case does not involve any shutdown pension rights.

For the reasons outlined in this opinion, the Court concludes that defendant is entitled to summary judgment as a matter of law as reasonable minds can only conclude from the undisputed material facts that Cyclops has not breached its collective bargaining agreements between plaintiffs and defendant and the transfer of pension fund assets and liabilities was lawful under ERISA. Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.