926 F.2d 1090
 13 Employee Benefits Ca 2007
 Margaret C. BLANK, Plaintiff-Counterclaim Defendant-Appellant,
Donald E. Alford, et al., Plaintiffs-Counterclaim Defendants,
v.
BETHLEHEM STEEL CORPORATION, Pension Plan of Bethlehem Steel
Corporation and Subsidiary Companies,
Defendants-Counterclaim Plaintiffs-Appellees.
 No. 90-3167.
 United States Court of Appeals,
Eleventh Circuit.
 March 19, 1991.
 
 John F. MacLennan, Kattman, Eshelman & MacLennan, P.A., Jacksonville, Fla., for plaintiff-counterclaim defendant-appellant.
 Richard J. Omata, Gregory C. Sisk, Catherine Hendricks, Karr, Tuttle & Campbell, Seattle, Wash., E. Lanny Russell, Smith & Hulsey, Jacksonville, Fla., for defendants-counterclaim plaintiff-appellees.
 Appeal from the United States District Court Middle District of Florida.
 Before CLARK, Circuit Judge, HILL* and COFFIN**, Senior Circuit Judges.
 COFFIN, Senior Circuit Judge:
 
 
 1
 Plaintiffs, a group a former salaried employees of Bethlehem Steel Corporation ("Bethlehem"), sued Bethlehem and its pension plan when they were denied retirement benefits upon the sale of Bethlehem's Buffalo Tank Division. They claimed that the denial to them of a contingent benefit, entitled the rule-of-65 benefit, violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Secs. 1001-1145, which governs this employee benefit plan. On summary judgment, the district court found that the benefits at issue were not accrued within the meaning of ERISA, and that the statute therefore did not proscribe the elimination of those benefits. See 29 U.S.C. Sec. 1054(g). The court also determined that it should apply an arbitrary and capricious standard of review to the General Pension Board's interpretation of the plan.[1] Applying that standard, the district court found no violation in the Board's determination that plaintiffs did not qualify for rule-of-65 benefits. We affirm.
 
 I.
 
 2
 In August 1986, Bethlehem sold its Buffalo Tank Division to an independent corporation called the Buffalo Tank Corporation. At the time of the sale, the division employed 300 people, including the plaintiffs at a number of facilities nationwide. The transaction was structured as a sale of an ongoing business. Under section 8.01 of the purchase and sale agreement, Buffalo Tank Corporation agreed to offer employment to all employees who were at work on the date of the sale, and to call back laid off Bethlehem workers in the event it was necessary to expand the workforce. It also agreed to pay substantially the same wages and benefits as Bethlehem had paid, and to honor years of service with Bethlehem for most purposes in the new corporation. In addition, Bethlehem agreed to honor service with the purchaser for purposes of accruing benefits under the Bethlehem pension plans.
 
 
 3
 Plaintiffs brought suit when they applied for and were denied a benefit called the "rule-of-65" retirement benefit. In relevant part, the Bethlehem pension plan provides:
 
 
 4
 Any participant (i) who shall have had at least twenty years of continuous service as of his last day worked, (ii) who has not attained the age of 55 years, and (iii) whose combined age and years of continuous service shall equal 65 or more but less than 80, and
 
 
 5
 (a) whose continuous service is broken by reason of a layoff or disability, or
 
 
 6
 (b) whose continuous service is not broken and who is absent from work by reason of a layoff resulting from his election to be placed on layoff status as a result of a permanent shutdown of a plant, department or subdivision thereof,
 
 
 7
 . . . . .
 
 
 8
 and who has not been offered suitable long-term employment as such employment is determined in accordance with rules and regulations adopted by the General Pension Board, shall be eligible to retire on or after January 1, 1986, and shall upon his retirement (hereinafter "rule-of-65 retirement") be eligible for a pension; ....
 
 
 9
 Bethlehem 1985 Salaried Pension Plan Sec. 2.7.
 
 
 10
 On the date of the sale, all of the plaintiffs met the age and service requirements of the rule-of-65 provision. The plan administrator nevertheless determined that they were not eligible for the benefit, based on rules adopted by the General Pension Board. Under the Board's rules, the sale was not deemed a permanent shutdown under Sec. 2.7(b) of the plan and plaintiffs were granted continuous service for their work at Buffalo Tank, making them ineligible for the benefit under Sec. 2.7(a).
 
 
 11
 In their suit, plaintiffs claimed that they were improperly denied rule-of-65 benefits under two theories. First, they claimed that the benefits at issue were accrued within the meaning of ERISA and that the plan could not lawfully reduce those benefits. Second, they claimed that the administrator erroneously concluded that they failed to meet the requirements of Sec. 2.7, and argued that they are entitled to benefits under one or the other of two subsections. They claimed eligibility under subsection (a) because their continuous service was broken and they were laid off when they ceased to be employed at Bethlehem. Alternatively, they argued that the sale of the division constituted a shutdown within the meaning of subsection (b). Plaintiffs further argued that the Board's decision against benefits should be reviewed de novo rather than under the arbitrary and capricious standard.
 
 
 12
 The defendants moved for summary judgment. The court granted the motion, finding that the benefit was not accrued within the meaning of ERISA, that the arbitrary and capricious standard of review applied, and that the General Pension Board's determination that plaintiffs were not entitled to benefits was not arbitrary and capricious. On appeal, plaintiffs challenge each of these rulings.
 
 II.
 
 13
 The district court correctly applied the relevant law in determining whether the rule-of-65 is an accrued benefit under ERISA and what standard of review should be applied to the decisions of the plan administrator. We adopt its reasoning and limit our discussion to the issue of whether the plan administrator's decision to deny rule-of-65 benefits was arbitrary and capricious.
 
 III.
 
 14
 In applying the arbitrary and capricious standard to a plan administrator's decision, the district court's role is limited to determining whether the contested interpretation was made rationally and in good faith. Guy v. Southeastern Iron Workers' Welfare Fund, 877 F.2d 37, 39 (11th Cir.1989); Anderson v. Ciba-Geigy Corp., 759 F.2d 1518, 1522 (11th Cir.1985). Factors taken into account include the uniformity of the Board's construction, the reasonableness of its interpretation and possible concerns with the way unexpected costs may affect the future financial health of the plan. Guy, 877 F.2d at 39. Other evidence of good faith may be found in "(1) internal consistency of a plan under the interpretation given by the administrators or trustees; (2) any relevant regulations formulated by the appropriate administrative agencies ...; and (3) factual background of the determination by a plan and inferences of lack of good faith, if any." Anderson, 759 F.2d at 1522.
 
 
 15
 We will uphold the district court's grant of summary judgment for Bethlehem only if no material issues of fact were in dispute. Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Plaintiffs were entitled to all reasonable inferences, see Spence v. Zimmerman, 873 F.2d 256, 257 (11th Cir.1989), but the issue was appropriate for summary judgment "unless there [wa]s sufficient evidence favoring the nonmoving party for a [trier of fact] to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
 
 A. Break in Continuous Service
 
 16
 Plaintiffs first contend that their continuous service was broken and that they were laid off within the meaning of the rule-of-65 benefit because the transfer of the division to a new corporation amounted to a layoff by Bethlehem. See Bethlehem Plan, Sec. 2.7(a). They base this argument exclusively on two cases, Conner v. Phoenix Steel Corp., 249 A.2d 866 (Del.1969), and a decision of the appeals board of the Pension Benefit Guaranty Corporation, Appeal of James Glenn, No. 84-187 (Dec. 30, 1985). These decisions reviewed plan provisions similar to the rule-of-65 benefit at issue here. Both cases involved the termination without cause of an individual employee. In each case, the reviewing body held that such a termination amounted to a break in continuous service caused by a layoff. From this, the court and board both concluded that the participants were entitled to the benefits they sought.
 
 
 17
 We do not see how these decisions help plaintiffs in this case. First, plaintiffs do not indicate how a decision holding that an individual's discharge without cause amounts to a break in continuous service sheds light on whether the sale of a division breaks the continuous service of the division's employees. Second, as we already have held, the plan involved here commits the interpretation of the terms of the plan to the Board, subject only to arbitrary and capricious review. In neither Conner nor Glenn was such deference applied. Third, other courts have held that an employee who continues employment with a purchasing corporation has not experienced a layoff by the original employer. See Rowe v. Allied Chemical Hourly Employees' Pension Plan, 915 F.2d 266, 269 (6th Cir.1990). Cf. Sejman v. Warner-Lambert Co., Inc., 889 F.2d 1346, 1350 (4th Cir.1989) (sale is not a termination for purposes of severance benefits); Lakey v. Remington Arms Co., 874 F.2d 541, 544-45 (8th Cir.1989) (same). Finally, to the extent we understand plaintiffs' argument, they suggest that the fact that Bethlehem no longer employs them per se breaks their continuous service under the plan. But the Bethlehem plan specifically provides that after some sales of divisions employees may be credited with continuous service in accordance with rules and regulations adopted by the General Pension Board. See Bethlehem Plan, section 5.3(c).[2] Thus, the plan explicitly contemplates that some transfers of divisions will not trigger a break in service necessary for rule-of-65 benefits. Plaintiffs have offered no evidence suggesting that the administrator's decision to credit service with Buffalo Tank Corporation as continuous service was arbitrary and capricious, and the decision is on its face patently reasonable.
 
 
 18
 B. Meaning of "Shutdown"
 
 
 19
 Plaintiffs' principal argument is that the Board's determination that the sale did not constitute a shutdown was arbitrary and capricious. The thrust of plaintiffs' argument is that the Board, without any basis, treated differently sales that were indistinguishable from this one.[3] They point specifically to the sales of Bethlehem facilities to Broyhill & Associates, Lehigh Coal and Navigation and Williamsport Wirerope.[4] Although each of these sales was called a shutdown, plaintiffs presented facts suggesting that at least some and perhaps many of the salaried employees involved in the sales were employed by the purchasing corporation. Those employees nevertheless were allowed to collect rule-of-65 benefits. This, plaintiffs assert, creates a material factual dispute that suggests that the Board's determination that the instant sale was not a shutdown was arbitrary.
 
 
 20
 The stipulated facts reveal, however, that there were very real differences in these sales. The parties agreed that in every Bethlehem sale that was conducted as a sale of an ongoing business, the purchaser agreed that it would offer employment to all Bethlehem employees in substantially the same positions in which they had been employed and for substantially the same rate of pay and benefits. In addition, for most purposes, employees would be entitled to credit with the purchasing employer for service time with Bethlehem. Moreover, employees working for the purchasing corporation would continue to be credited with service for vesting and eligibility purposes for certain benefits under the Bethlehem plan. In contrast, the parties stipulated that in none of the sales pointed to by plaintiffs and called shutdowns did the purchasing company promise to offer employment to Bethlehem employees or promise substantially similar wages and benefits to them.
 
 
 21
 As the district court found, this stipulated difference is ample basis for finding the Board's decision not arbitrary. The presence of discrete similarities between particular sales does not convert the Board's decision to treat the sales differently into an arbitrary one per se unless there was no reasonable basis for the administrator to call the other sales shutdowns while not calling this sale a shutdown. The fact that some salaried employees from those other sales were employed by the purchasing corporation does not create a material factual dispute about the nature of each sale as a whole.
 
 
 22
 The plan admits that it has not closely examined sales that Bethlehem has declared to be shutdowns, choosing instead to examine closely only those decisions in which Bethlehem has made a declaration that is detrimental to plan participants. This procedure is somewhat troubling because it would appear that the plan administrator is in no position accurately to determine whether sales differ if it examines only the specifics of one type of sale. Nevertheless, despite the fact that the plan administrators are placing themselves at some risk should Bethlehem choose arbitrarily to benefit a particular group of employees by calling a sale a shutdown where the terms of that sale are indistinguishable from others they have decided were not shutdowns, no such arbitrariness has been shown here. The plan apparently operated on the assumption that Bethlehem would not choose to impose substantial benefit obligations upon itself where it had negotiated substantial employee protections into its sale terms. The stipulated facts show that, in all of the sales pointed to by plaintiffs, that assumption was not faulty. There is, therefore, no factual basis to support a finding that the administrator's procedures have resulted in arbitrary treatment of similarly situated employees.
 
 
 23
 Plaintiffs' argument both below and to this court was not that a sale such as this can reasonably be understood only to be a shutdown. They make no general argument about the unreasonableness of the administrator's interpretation. In fact, at oral argument, they observed that they ordinarily would envision a shutdown to encompass only the complete abandonment of a facility. Plaintiffs nevertheless rely on Varhola v. Cyclops Corp., 657 F.Supp. 595 (S.D.Ohio 1986), in which the court reasoned that since the original owner of a facility no longer operated the plant after its sale, the facility was shut down vis a vis the original corporation. Id. at 597. This decision, however, was remanded by the Sixth Circuit in Varhola v. Doe, 820 F.2d 809 (6th Cir.1987), for review under the arbitrary and capricious standard. 820 F.2d at 813-14. On remand, the district court held that the administrator's determination that the sale of an operation as an ongoing concern did not constitute a shutdown was not arbitrary and capricious, and this determination was not further appealed. See Varhola v. Cyclops Corp., 914 F.2d 259 (6th Cir.1990). Thus, the original district court opinion in Varhola does not continue to support a general conclusion that the sale of an operation must be considered a shutdown as to the original employer.
 
 
 24
 Moreover, it seems entirely reasonable for the plan administrator to conclude that where the negotiated terms of the sale included contractual promises from the purchaser to employ Bethlehem employees in substantially the same positions and on the same terms, including benefits, the sale should not be considered a shutdown entitling plaintiffs to rule-of-65 benefits as well. This reading is consistent with the decisions of courts upholding determinations that sales of operations do not constitute terminations triggering severance benefits. See, e.g., Sejman, 889 F.2d at 1350; Lakey, 874 F.2d at 544-45.
 
 
 25
 Finally, plaintiffs do not contend that the Board's construction of the term "shutdown" was internally inconsistent nor do they offer any evidence of bad faith. See Anderson, 759 F.2d at 1222 (internal consistency and evidence of bad faith are factors in determining whether decision is arbitrary and capricious). Instead, they admit that the meaning of the term is not obvious from the plan document and stipulate to facts suggesting that the Board reviews precisely those situations in which Bethlehem's description of a sale has adverse consequences for plan participants.
 
 
 26
 We therefore conclude that the district court did not err in holding that plaintiffs failed to offer sufficient material facts from which a factfinder could determine the Board's decision to be arbitrary and capricious.
 
 
 27
 AFFIRMED.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Frank M. Coffin, Senior U.S. Circuit Judge, for the First Circuit, sitting by designation
 
 
 [1]
 Section 8 of the Bethlehem 1985 Salaried Pension Plan sets forth the composition of the General Pension Board and assigns to it authority for administration of the plan
 
 
 [2]
 Section 5.3(c) provides:
 (c) Service with another employer to which an Employing Company sells or transfers all or part of a plant, department, division, location, facility, subsidiary or other unit of such Employing Company may be credited as continuous service under this Plan in accordance with and for such purposes as may be set forth in rules and regulations adopted by the General Pension Board with respect to each such sale or transfer.
 (Emphasis added.)
 
 
 [3]
 We note that there is no dispute that all employees involved in the Buffalo Tank sale were treated the same
 
 
 [4]
 We assume without deciding that two of these sales, which occurred after the transaction at issue here, nevertheless are relevant to whether the Board acted arbitrarily at the time it denied benefits to the plaintiffs. But see Brown v. Blue Cross & Blue Shield of Alabama, 898 F.2d 1556, 1559 (11th Cir.1990) (in determining if administrator's decision was arbitrary and capricious, court must determine whether there was a reasonable basis for the decision based on facts known at the time of the decision)