William C. BEDINGHAUS, Robert D. Bacon, and Barbara J. Orr, individually and on Behalf of all other similarly situated, Plaintiffs,

v.

MODERN GRAPHIC ARTS, INC., and Times Publishing Company d/b/a St. Petersburg Times, Defendants.

No. 89–1668–CIV–T–17C.

United States District Court, M.D. Florida, Tampa Division.

Feb. 5, 1992.

1. Plaintiffs' motion for partial summary judgment as to liability, filed on August 26, 1991.

2. Plaintiffs' memorandum of law in support of motion for partial summary judgment as to liability, filed on August 26, 1991.

3. Defendants' joint motion for summary judgment on all pending claims, filed on August 27, 1991.

4. Defendants' memorandum of law in support of their joint motion for summary judgment, filed on August 27, 1991.

5. Defendant Times' alternative motion for summary judgment on Count II, filed on September 4, 1991.

6. Defendant Times' memorandum in support of alternative motion for summary judgment on Count II, filed on September 4, 1991.

7. Defendants' memorandum in opposition to Plaintiffs' motion for partial summary judgment, filed on October 16, 1991.

8. Plaintiffs' memorandum in response to Defendants' joint motion for summary judgment, filed on October 16, 1991.

9. Plaintiffs' memorandum in response to Defendant Times' alternative motion for summary judgment on Count II, filed on October 16, 1991.

This circuit clearly holds that summary judgment should only be entered when the nonmoving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

In our view the plain language of Rule 56(c) mandates the entry of summary

Leonard Rabon Poe, Tampa, Fla., for plaintiffs.

George Karl Rahdert, Rahdert & Anderson, St. Petersburg, Fla., Donald B. Harden, Fisher & Phillips, Atlanta, Ga., for defendants.

ORDER ON MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on the following motions and responses:

judgment, after adequate time for discovery And upon motion, against a party who fails to establish the party's case, and on which that party will bear the burden of proof at trial. *Id.* [477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d] at 273.

The Court also said, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial'" *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

This Court finds that there is an absence of a genuine issue as to any material fact present in this case. Therefore, this case will be decided as a matter of law.

FACTS:

Plaintiffs class is made up of persons who were employees of Modern Graphic Arts, Inc. In or about April of 1989, Modern Graphic Arts, Inc. sold substantially all of its assets and goodwill to MGA Holdings, Inc. ("the sale"). Prior to the sale, the majority of the voting stock of Modern Graphic Arts, Inc. was owned and controlled by the Times Publishing Co. (doing business as the St. Petersburg Times). Most of the class members now work for MGA Holdings, Inc.

At the time of and prior to the sale, Modern Graphic Arts, Inc. maintained an employee policy manual entitled Staffer Handbook which outlined the policies, procedures, and benefits applicable to its employees. The Staffer Handbook stated in its Introduction that it was intended only to be a supplement to the Times–O–Guide (Times Publishing Co. benefit manual) which each employee received at their check-in at the Times Personnel Office. Each new hire to Modern Graphic Arts, Inc. reported to the St. Petersburg Times for check-in prior to reporting to Modern Graphic Arts, Inc. The Staffer Handbook included a benefit entitled "IN–LIEU PAY". The "IN–LIEU PAY" benefit provided for the payment of severance pay upon termination without cause as defined in the Times–O–Guide. Plaintiffs claim that the "IN–LIEU PAY" is an unfunded employee benefit plan under ERISA.

Prior to the sale, a representative of the class inquired of the President of Modern Graphic Arts, Inc. whether the class members would be paid "IN–LIEU PAY" upon the sale of Modern Graphic Arts, Inc. The president, Mr. O'Hearn, responded that the employees (class members) would not receive "IN–LIEU PAY" as they would not be unemployed upon the sale of Modern Graphic Arts, Inc. Each employee was to be maintained by MGA Holdings.

The employees took the position that they were no longer employed by Modern Graphic Arts, Inc. and were thus terminated by Modern Graphic Arts, Inc. upon its sale. They contend that this severance was for no cause of their own and they are therefore entitled to "IN–LIEU PAY" under their benefits plan. Defendants claim that Plaintiffs accepted employment with the purchaser of Modern Graphic Arts, Inc. and as a result of continued, uninterrupted employment, Plaintiffs were never "terminated", "separated" or "discharged" as those terms are used in relevant provisions of the Staffer Handbook and/or provisions of the Times–O–Guide incorporated therein. They also take the position that the Defendants interpretation and application of eligibility and severance benefit provisions is fully consistent with the purpose, history, terms and intent of the subject severance benefit plans.

Defendants alternatively claim that the Plaintiffs are barred from recovery because they were not participants in the severance plan sponsored by the Times and covering Times Employees. Defendants claim that Plaintiffs were not employees of the Times Publishing Co. for purposes of payment of benefits.

ISSUES:

The ultimate issues which Plaintiffs seek to have the Court determine are whether upon the sale of Modern Graphic Arts, Inc., the employees of Modern Graphics were terminated and entitled to termination benefits; when their employment is maintained by the purchasing company, and if so enti-

tled, if they were employees of the Times for purposes of benefit payments.

## A. EMPLOYER

■ Plaintiffs argue that in addition to Modern Graphic Arts, Inc. as their employer, Times Publishing Company was also an employer of each class member, in that it was "acting directly as an employer, in relation to an employee benefit plan..." 29 U.S.C.S. § 1002(5). As such, it was the "plan sponsor" and "administrator" of the "TERMINATION" plan contained in the Times–O–Guide as applied to the class members.

The Court finds the Plaintiffs argument worth merit as 29 U.S.C.S. § 1002(16)(A) and (B) speak both to the person designated by the terms of the instrument and the employer who establishes or maintains the plan. The instrument itself stated that it was a supplement to the Times–O–Guide and that a definition of termination was found in the Times–O–Guide. Plaintiffs were also instructed that any questions with regard to benefits should be addressed to the Times office. Plaintiffs were clearly led to believe that the Times Publishing Company was the administrator of their benefits.

Under 29 U.S.C.S. § 1002(7), each member of the Plaintiff class was a "participant" because each is a "former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization ...". 29 U.S.C.S. § 1132(a)(1)(B) then permits recovery of benefits due if in fact so due.

## B. APPLICABLE STANDARD OF REVIEW

■ Plaintiffs argue that the Defendants' denial of Plaintiffs claims to severance pay in connection with the sale is subject to a *de novo* review by this Court. Plaintiffs contend that the administrator or fiduciary of the plan was not given discretionary authority under the plan to determine eligibility for benefits or to construe the terms of the plan.

The validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue. Consistent with established principles of trust law, a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. For purposes of actions under § 1132(a)(1)(B), the *de novo* standard applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The subject plan does not provide that either Modern Graphic Arts, Inc. or Times Publishing Company has the authority to determine eligibility for benefits. The Court finds that the applicable standard of review is the *de novo* standard.

## C. CONSTRUCTION OF "TERMINATION"

■ Plaintiffs contend that the proper construction of "TERMINATION" is not unemployment but a termination between employer and employee as regards the employment. Plaintiffs state that each transferred employee was "discharged as a full-time staffer" under the Times–O–Guide, or suffered a "termination" under the Staffer Handbook.

■ Under a *de novo* review, the terms in the plan at issue must be interpreted by the reviewing Court. Unless the plan language specifies otherwise, courts should construe any disputed language 'without deferring to either party's interpretation' *Brewer v. Lincoln Nat. Life Ins. Co.*, 921 F.2d 150, 153–54 (8th Cir.1990). The issue is "simply one of contract interpretation." *Harper v. R.H. Macy & Co., Inc.*, 920 F.2d 544, 545 (8th Cir.1990). Modern Graphic Arts, Inc.'s Staffer Handbook contains an Introduction that states it is intended only to be a supplement to the Times–O–Guide that each employee received at check-in

time at the Times Personnel Office. It also states that if a different interpretation or conflict exists between the Times–O–Guide and the Staffer Handbook, the Times–O–Guide will prevail unless specifically identified to the contrary.

The "IN–LIEU PAY" provision in question states that if an employee is terminated without cause, a staffer is entitled to one week's pay for each complete six month period of employment upon termination. Termination with cause is defined in the Times–O–Guide. In looking at the Times–O–Guide, under Termination, it states, "Our hope is that every staffer who joins the company will stay until retirement. However, we realize this is unrealistic and there will be turnover. Such separations, whether through resignation or discharge are simpler when certain ground rules are stated and understood."

According to the terms of Modern Graphic Arts, Inc.'s policy read along with the terms of the Times policy, the plaintiffs were not involuntarily terminated when the employer-employee relationship was terminated. The policies contemplate unemployment as the result of any termination that would lead to the payment of "IN–LIEU PAY". The Times–O–Guide reads "Such separations, whether through resignation or discharge ...". Such language clearly leads a reader to the conclusion that an employee would be unemployed after the "separation" no matter how short the term of unemployment. Plaintiffs at no time were unemployed under the terms of the sale of Modern Graphic Arts, Inc.

The 11th Circuit has held that the "form" of termination is the controlling factor. In *Anderson v. Ciba–Geigy Corp.*, 759 F.2d 1518, 1521 (11th Cir.1985) cert. denied, 474 U.S. 995, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985), it was found that the "form" of termination was the controlling factor under Ciba–Geigy's own definition of the word. In Ciba–Geigy's Employee Benefit Plan, termination was paid to employees terminated for other than cause. Examples of "other than cause" included corporate reorganizations. Plaintiffs here can not point to such examples to demonstrate

the basis for their belief that they should be paid "IN–LIEU PAY". Likewise, in *Harris v. Pullman Standard, Inc.*, 809 F.2d 1495, 1498 (11th Cir.1987), the Court found that according to the terms of Pullman's own policy, the sale of the corporation involuntarily terminated the plaintiffs' jobs, thereby making them eligible for severance pay. The terms of Pullman's policy indicated that an employee would be eligible for a termination allowance if the employee's job is eliminated, and a new assignment cannot be found for him within the company. The policy also stated that for all involuntary terminations "other than layoff", the termination allowance would be granted. Modern Graphic Arts, Inc. and Times Publishing Co. did not lead the Plaintiffs to believe that they would be found a new position within the company. Nor did it limit exclusions from benefits for terminations to layoffs.

Likewise, in *Blank v. Bethlehem Steel Corp.*, 926 F.2d 1090, 1093 (11th Cir.1991), that court stated that other courts have held that an employee who continues employment with a purchasing corporation has not experienced a layoff by the original employer. Only where the benefit plan calls for continuing employment with the selling employer have courts stated that employment by a purchasing corporation is not considered continued employment and therefore the effected employees are entitled to termination pay. "To further our concept of career employment, the Company will take all practical steps to provide continuing employment, ..." was held to guarantee employment with the selling company and not interpreted to mean employment with a purchasing company. *Ulmer v. Harsco Corp.*, 884 F.2d 98, 99 (3d Cir.1989).

Plaintiffs do not have the benefit of illustrating that their benefits guaranteed continued employment with Modern Graphic Arts, Inc. On the contrary, the benefits available to Plaintiffs seemed to be a guarantee only on unemployment for something other than cause. Plaintiffs were never unemployed.

In light of the provisions in Modern Graphic Arts, Inc.'s benefit's manual together with the provisions in Times Publishing Co.'s Times–O–Guide, it is the opinion of this Court that the plaintiffs are not entitled to termination benefits under their respective plan in the event of the sale of the company by the corporation. Accordingly, it is

ORDERED that Defendants' joint motion for summary judgment on all pending claims is granted, and Plaintiff's motion for partial summary judgment as to liability is denied. The Clerk is directed to enter a final judgment of dismissal in favor of Defendants.

DONE AND ORDERED.