**Norbert W. PERKIE, Plaintiff,**

v.

**GROUP TECHNOLOGIES, INC., a Florida corporation, and Honeywell, Inc., a Delaware corporation, et al., Defendants.**

**No. 92–922–CIV–T–17B.**

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 28, 1994.

the instant motion for summary judgment.

Charles E. Lykes, Jr., Law Office of Charles E. Lykes, Jr., Clearwater, FL, for plaintiff.

George Barford, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, PA, Tampa, FL, for defendant Honeywell, Inc.

Grant David Petersen, Haynsworth, Baldwin, Johnson & Harper, Tampa, FL, for defendant Group Technologies, Inc.

## ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's, Group Technologies, Inc., (Group Technologies), Motion for Summary Judgment (Docket No. 45); and Defendant's, Honeywell, Inc. (Honeywell), Motion for Summary Judgment (Docket No. 49). Plaintiff filed his consolidated reply to these motions on January 10, 1994 (Docket No. 55).

### SUMMARY OF FACTS

Plaintiff, Norbert Perkie was employed as "lead inventory analyst" by Defendant, Honeywell, Inc., at its Tampa facility, until May, 1989, when Honeywell sold its facility to Defendant, Group Technologies, Inc. The

Sales and Purchase Agreement between Defendants allowed for existing employees of Honeywell to be re-hired by Group Technologies. An employee who wished to continue employment with Group Technologies could continue to accrue credit for service with Group Technologies as a "transfer employee" under the Honeywell Retirement . Plan. However, no employee could retire from Honeywell and draw the accrued benefits while continuing employment with Group Technologies; this arrangement required that the employee be hired as a "new employee" for purposes of Group Technologies' Retirement Plan. Plaintiff continued his employment as a transfer employee with Group Technologies until August 1990, when he was laid off. Group Technologies claims that economic conditions, specifically a downturn in the Defense Industry, forced it to reduce its workforce by 20%, and thereafter to consolidate several of its departments. Among the departments consolidated were the Inventory and Production sections. Plaintiff alleges that in the course of this reduction, he was discriminated against by Defendant, Group Technologies, because of his age and sex. Plaintiff further alleges that Defendants conspired to reduce the benefits of the Honeywell Retirement Plan, which deprived Plaintiff of his recall rights for layoff. More detailed facts will be provided in the discussion.

## DISCUSSION

### PART 1: COUNTS I THROUGH IV, DISCRIMINATION

Counts I through IV are allegations only against Defendant, Group Technologies, Inc.; Defendant, Honeywell, Inc. is not charged under these counts. These counts will be dealt with simultaneously because they require the same burdens of proof and establishment of the same prima facie case.

In Count I, Plaintiff charges Defendant, Group Technologies, with violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., and Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e et seq. Count II alleges intentional or malicious violation of the ADEA by Defendant. In Count III, Plaintiff charges sex discrimi-

nation in violation of Title VII of the Civil Rights Act of 1986 and 1991, 42 U.S.C. § 2000e et seq. Count IV alleges intentional or malicious violation of the same Civil Rights Act by Defendant.

 *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), allocates the burdens and order of presentation of proof required in discrimination cases. First, Plaintiff must establish a prima facie case of discrimination by showing: . 1) that he is within a protected class covered by the statute; 2) that he was qualified for the job; and 3) that he has evidence, either direct or circumstantial, that tends to prove Defendant intended to discriminate against him because of his age and/or sex. Once Plaintiff establishes his prima facie case, he creates a presumption of unlawful discrimination. *Id.* at 802, 93 S.Ct. at 1824. The burden of production then shifts to Defendant to show some legitimate, nondiscriminatory reason for its actions. *Id.* at 802, 93 S.Ct. at 1824. If Defendant satisfies this burden, then Plaintiff must have the opportunity to prove by a preponderance of the evidence that the legitimate reasons advanced by Defendant were but a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825.

 The United States Supreme Court made it clear, in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), that Defendant's burden is not one of persuasion. *Id.* at 254, 101 S.Ct. at 1094. The employee "need only produce admissible evidence which would allow the trier-of-fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* at 257, 101 S.Ct. at 1095. If Defendant succeeds, the presumption is rebutted, but the evidence must be presented with "factual clarity so that Plaintiff will have a full and fair opportunity to demonstrate pretext." *Id.* at 255–256, 101 S.Ct. at 1094–1095. *Board of Trustees of Keene State College et al. v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) further clarifies this burden: "The employer's burden is satisfied if he explains what he has done or produces evidence of legitimate non-discriminatory

reasons." *Id.* 439 U.S. at 25 n. 2, 99 S.Ct. at 296 n. 2.

The burden of persuasion rests at all times with Plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. Once Defendant rebuts the presumption of discriminatory conduct, Plaintiff then has the opportunity to prove that the reason given is a pretext, and Plaintiff may succeed by directly persuading the Court that the discriminatory reason more likely motivated the employer, or by indirectly showing that the employer's profferred explanation is unworthy of credence. *McDonnell Douglas,* 411 U.S. at 804–805, 93 S.Ct. at 1825.

This Court is persuaded by the language in these cases that refers to the Plaintiff proving his case to "the Court" or to "the trier-of-fact." Defendant, Group Technologies, advances legitimate, non-discriminatory reasons to overcome the presumption of discriminatory conduct. However, Plaintiff successfully submits evidence of pretext, with accompanying affidavits and depositions, sufficient to overcome a summary judgment motion and allow his case to be heard by a jury. Plaintiff has established the existence of genuine issues of material fact with regard to all essential elements on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Additionally, this Court agrees with the reasoning of the Eighth Circuit in *Johnson v. Minnesota Historical Society,* 931 F.2d 1239 (8th Cir.1991):

> Summary judgment should seldom be used in cases alleging employment discrimination ... The reason is the special category in which Congress and the United States Supreme Court visualized these cases ... Knowing that discrimination is difficult to prove by direct evidence, employment discrimination cases require a simplified proof from a claimant in order to create an inference of discrimination and thereby establish a prima facie case ... Summary judgment should be sparingly used.

Thus, Defendant's Motion for Summary Judgment on Counts I through IV are denied.

### A. *Prima Facie Case*

■ *Age Discrimination.* It is undisputed that Plaintiff, 58 years old at the time of his termination, is within the protected class under the ADEA, which prohibits discrimination against employees within the age bracket of 40–70 (Docket No. 55, p. 13; 29 U.S.C. § 626). Plaintiff provides that he was qualified for the new, consolidated job because he was entrusted with "more than double the responsibility of any of the younger females retained after his discharge" (Docket No. 55, p. 21) and because Defendant was forced to rely on a 20–year old incident with another employer to defend Plaintiff's termination (Docket No. 55, p. 16). Despite Plaintiff's qualifications, he was rejected by Defendant for continued employment (Docket No. 55, p. 8). Finally, Plaintiff provides evidence of discrimination by showing that younger employees outside the protection of the ADEA were retained, and that these employees did not have skills in both inventory and production control (Docket No. 55, pp. 8–9). Plaintiff has set out a sufficient prima facie case.

■ *Sex Discrimination.* Title VII of the Civil Rights Acts of 1986 and 1991, 42 U.S.C. § 2000e *et seq.,* prohibits discrimination against any person based on, *inter alia,* gender. Plaintiff alleges that he was discriminated against because of his gender, thus he falls within the statute's protected class. Plaintiff's allegations regarding his qualifications for the consolidated Inventory/Production job are the same as those discussed above. However, in being rejected for the job, Plaintiff asserts that his female supervisor gave preferential treatment to similarly situated females (Docket No. 55, p. 8), and alleges discriminatory intent because an exclusively female staff was retained after the layoff (Docket No. 55, p. 8). Thus, Plaintiff has met the minimal requirements necessary to establish a prima facie case of sex discrimination.

### B. *Defendant's Rebuttal*

■ *Age Discrimination.* Defendant rebuts Plaintiff's prima facie case first by asserting that its reduction in workforce was mandated by economic conditions which required a 20% cutback in employees, and the

consolidation thereafter of several departments (Docket No. 45, p. 3). This is a legitimate, non-discriminatory reason for discharging an employee. *Earley v. Champion International Corp.*, 907 F.2d 1077 (11th Cir. 1990).

Defendant next rebuts Plaintiff's qualifications to do the consolidated Inventory/Production job by relying on the fact that Plaintiff had been terminated 20 years prior, while an employee of Honeywell, Inc., from a production position (Docket No. 45, p. 8). Defendant then contends that Plaintiff's termination was founded on the "totem-pole" evaluation by his immediate supervisor (Docket No. 45, pp. 4–7), which together with the prior layoff from a production position at Honeywell, support the fact that Plaintiff was neither qualified for the new Production/Inventory position, nor was he rejected for any reason based on age or sex (Docket No. 45, pp. 5–7).

■ *Sex Discrimination.* Defendant rebuts again with the legitimate, non-discriminatory purpose of a reduction in workforce due to economic conditions (Docket No. 45, p. 10), and again relies on the "totem pole" rankings as a legitimate means of determining the individuals to be laid off (Docket No. 45, p. 12). Defendant also asserts that prior to the reduction in workforce, 36% of the workforce was women; after the reduction, 35% were women (Docket No. 45, p. 7). Thus, Defendant has overcome the presumption of discrimination.

■ The Court notes here, with regard to the allegations of both age and sex discrimination, that Defendant argues that Plaintiff's reasons for alleging discriminatory conduct do not support a finding of pretext. In its Motion for Summary Judgment, Defendant presupposes several arguments that "may be made" by Plaintiff. Defendant begins and ends his arguments with the proposition that Plaintiff, in order to avoid summary judgment, must not only prove pretext, but must also prove that the real reason for his layoff was based on discrimination. As support for this argument, Defendant cites the case of *St. Mary's Honor Center v. Hicks*, —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In *Hicks*, the Supreme Court addressed the question of whether a finding of pretext automatically mandates a win for the plaintiff in a discrimination case. The Court held that finding a defendant's reason was pretextual still requires the plaintiff to prove the discrimination; however, the focus of the case was on the *trier-of-fact's* ultimate decision. It does not extend the holding to require that Plaintiff must prove the pretext and/or the discrimination *during the pleadings stage.* In fact, to do so would contravene the *Celotex* requirements for summary judgment, which allow a complaint to go forward if the non-moving party can sustain its burden of raising substantial issues of material fact, supported by evidence outside the four corners of the complaint, on the elements the non-moving party will have to prove at trial. Here, Plaintiff has met that burden, and this Court will not require Plaintiff to prove his case in the pleadings.

### C. *Plaintiff's Evidence of Pretext*

■ *Age Discrimination.* Here, the complaint begins to overlap with the alleged ERISA violation, discussed fully in Part II, *infra.* Plaintiff contends, and supports the allegation with an affidavit and two exhibits, that Defendant's reduction in workforce was illusory because thirty-two of the eighty-four layoff positions were earmarked for rehire at the time of the layoffs (Docket No. 55, p. 9). Plaintiff asserts that employees who had attained the age of fifty and drew salaries of $50,000.00 (the "fifty-fifty club") were targeted for layoffs in order to save retirement benefits, and that younger workers were "sprinkled in" to hide the discriminatory effect (Docket No. 55, p. 9). Plaintiff also provides evidence of a layoff roster which shows that 60.7% of employees laid off were within the protected age group, and asserts that this figure is in direct contradiction to a 54% figure claimed by the Defendant (Docket No. 55, p. 18).

In alleging pretext as to his qualifications for the new Inventory/Production job, Plaintiff first attacks Defendant's reliance on his layoff from a production position at Honeywell, Inc. twenty years ago by providing an affidavit from a third party to the effect that the incident was the result of a personality

dispute with a supervisor. Next, Plaintiff contends that the "totem pole" evaluation system was "inaccurate", "inconsistent", "a sham," and devised as a means to hide discriminatory intent (Docket No. 55, pp. 14–18). Plaintiff provides exhibits intended to show the inaccuracy, not only in his ratings, but also in the ratings of the females retained (Docket No. 55, p. 14). Additionally, Plaintiff provides an affidavit from the younger, female employee in his department who was classified as a "layoff." In her affidavit, the employee states that in fact she voluntarily resigned (Docket No. 55, p. 14). Thus, Plaintiff alleges that such employee's classification as a layoff was intended to conceal the discrimination (Docket No. 55, p. 14), and that two supervisors intentionally falsified their deposition and affidavit testimony to further the concealment (Docket No. 55, p. 14).

Additionally, Plaintiff provides an affidavit from a witness to whom a discriminatory, age-based comment was made by the Company President (Docket No. 55, p. 14–15).

*Sex Discrimination.* Plaintiff's focus here is on his female supervisor's conduct. He specifies his general assertion that she "treated males and females quite differently in the workplace" (Docket No. 55, p. 23) by drawing attention to "one-on-one" conferences. Plaintiff alleges, with a supporting affidavit from another employee, that females were "regularly and cordially included" while males were "generally overlooked" (Docket No. 55, p. 23).

Plaintiff also points to his supervisor's false statement regarding the female employee who was classified as a layoff, when in fact she voluntarily resigned (Docket No. 55, p. 23), and to the misleading and inconsistent "totem pole" ratings given to himself and another employee (Docket No. 55, p. 23–24), both discussed above.

Additionally, Plaintiff asserts, again with a supporting affidavit, that his supervisor treated male employees "bruskly and rudely" while female employees were treated "cordially and favorably" (Docket No. 55, p. 8). Finally, Plaintiff provides an exhibit intended to show that he and another male in his section, who was also laid off, qualified equally or better than the exclusively female staff which was retained (Docket No. 55, p. 8).

Thus, in light of Plaintiff's ability to raise substantial issues of material fact on the elements he will have to prove at trial, summary judgment on Counts I through IV is not warranted.

### D. *Damages and Jury Trial*

Defendant claims that the ADEA does not afford punitive damages, but the 11th Circuit, as well as a number of other jurisdictions, interprets the statute differently. The court in *Wilson v. S & L Acquisition Co.*, 940 F.2d 1429, 1432 (11th Cir.1991) held that damages under the ADEA are both legal and equitable. Thus, Plaintiff is entitled to claim appropriate punitive damages.

Defendant also asserts that Plaintiff is not entitled to a jury trial, damages for emotional distress, or other equitable remedies under the Civil Rights Act of 1991 because the remedies afforded by the statute are not retroactive to any action which arose prior to the effective date of the Act. However, Defendant misreads the 11th Circuit decisions, all of which hold that the remedies afforded by the Civil Rights Act of 1991 do not apply retroactively to cases *pending* before the Act took effect. *Goldsmith v. City of Atmore*, 996 F.2d 1155 (11th Cir.1993); *Curtis v. Metro Ambulance Service*, 982 F.2d 472 (11th Cir.1993); *Sussman v. Salem, Saxon & Nielson*, 815 F.Supp. 1447 (M.D.Fla.1993); *Lowe v. GTE Florida, Inc.*, 1993 WL 83296, 1993 U.S.Dist. LEXIS 3463, 7 Fla.Law W.Fed. D 77 (M.D.Fla.1993).

The Civil Rights Act of 1991 became effective November 21, 1991. *Goldsmith*, 996 F.2d at 1158. Plaintiff filed his case on July 1, 1992. Thus, because Plaintiff's case was not pending before the effective date of the Act, the remedies provided by the statute are available to him.

### *PART 2: COUNT V, ERISA*

In Count V, Plaintiff charges that Defendants, Group Technologies, Inc. and Honeywell, Inc. "combined, agreed and acted to adopt a scheme of reducing the workforce of the plant operation in a manner designed

to unlawfully reduce the exposure of either corporation to retirement benefits and entitlement, including severance pay, health insurance, and retirement payments in violation of Title 29, United States Code § 1140" (Docket No. 29, p. 6). Plaintiff claims he has lost some of his retirement and severance benefits, and was deprived of the enhancement of his retirement benefits resulting from his two-year recall rights with Defendant, Honeywell, Inc. (Docket No. 29, pp. 6–7).

After receiving the original complaint (Docket No. 1), Defendant Honeywell, Inc. moved for a more definite statement (Docket No. 30). Plaintiff responded with specific allegations as to his loss of recall rights with Defendant, Honeywell, Inc. (Docket No. 35).

Plaintiff is alleging that he was entitled to recall rights under the provisions of the Honeywell, Inc. Retirement Plan for the time he was laid off from Group Technologies, Inc. in August 1990 until he retired in January 1991. Plaintiff appears to be claiming that even though he was employed by Group Technologies, he was laid off from Honeywell, Inc., and thus entitled to those recall rights. Plaintiff further claims that Group Technologies and Honeywell conspired between them to deprive employees of that and other retirement plan benefits; however, Plaintiff is not specific as to what other benefits were lost.

In support of his allegations of conspiracy, Plaintiff states that Honeywell began trimming its workforce of older workers before the transition. However, Honeywell is not named as a Defendant in the age discrimination counts; thus, the Court fails to see the relevance of this allegation. Plaintiff also states that, prior to the transition, Honeywell disseminated information about the effect on retirement benefits without referring to any bridging credit or other enhancement. Again, the Court fails to see the relevance of this statement.

Next, Plaintiff alleges a "meticulous arrangement" for a continuation of the work of Honeywell by Group Technologies, for the benefit of Honeywell, and that the sales price remains subject to adjustment. Also, Honeywell provided several administrative services for Group Technologies, for which they were paid a fee. A Group Technologies employee acted as liaison for transferring employees for information about Honeywell's retirement benefits. Plaintiff claims all of this is evidence of collaboration between the Defendants with regard to the administration of the Honeywell Retirement Plan. Again, this Court finds nothing relevant in these statements with regard to the allegation that Plaintiff lost retirement benefits.

Plaintiff next claims that the method of calculation of retirement benefits changed between 1988 and 1993, resulting in a substantial loss of retirement pay to another Honeywell employee. However, Plaintiff fails to state how the method of calculation was changed to achieve this result, nor does Plaintiff show how his retirement benefit was affected.

Then Plaintiff claims that an "inordinate number" of employees laid off in August 1990 were over forty and less than fifty-five, but that all of the older employees retained were over fifty-five. From this, Plaintiff contends that Group Technologies retained the over fifty-five employees in order to keep them from drawing retirement benefits from Honeywell. However, Plaintiff was 58 at the time of his layoff, and thus entitled to early retirement benefits. Plaintiff has provided no evidence, direct or indirect, of a conspiracy to this effect.

Plaintiff's conspiracy theory is tied together only by vague innuendos based on actions that would normally be convenient, intelligent business decisions when one large corporation buys another large corporation, and both want to effect a smooth transition.

Plaintiff admits in his pleading that a contractual agreement between Honeywell and Group Technologies, which disallowed an employee who retired from Honeywell to be employed as a transfer employee with Group Technologies, was indirectly communicated to the employees of the plant. This statement does nothing to advance the conspiracy theory, and because the contractual provision did not affect already accrued, normal retirement benefits, it is not a violation of ERISA. *Deak v. Masters, Mates and Pilots Pension*

*Plan,* 821 F.2d 572 (11th Cir.1987); *Fine v. Semet,* 699 F.2d 1091 (11th Cir.1983) (suspension of benefits other than normal retirement benefits due to reemployment does not violate ERISA) (Docket No. 45, p. 18). Rather, the provision was provided to prevent "double-dipping" and for administrative convenience (Docket No. 49, pp. 12–13).

*Deak* and *Fine* also apply to Plaintiff's alleged loss of recall rights, since they were not normal retirement benefits. Defendant, Honeywell, Inc. responds also that these are contingent, unaccrued benefits, subject to termination by the employer (Docket No. 49, p. 16). As such, the sale of a division to another entity which employed the predecessor's employees did not constitute a break in service or layoff which would allow former employees to receive enhanced benefits contingent on a layoff. *Blank v. Bethlehem Steel Corp.,* 926 F.2d 1090, 1093 (11th Cir.1991). Thus, because by the contractual provisions of the sale, Honeywell's employees were technically terminated from Honeywell employment, there can be no recall rights for layoff from Group Technologies. (Docket No. 49, p. 16).

Finally, there is merit to both Defendants' arguments that Plaintiff did not exhaust his administrative remedies. Plaintiff admitted in his deposition that he did not inquire as to why he was not entitled to the year-and a half credit with Group Technologies (P. Depo. p. 129; Docket No. 49, p. 18). But Plaintiff also admitted that he obtained all the benefits he was entitled to under the Plan (P. Depo. p. 153; Docket No. 49, p. 18). Thus, if Plaintiff received the benefits to which he is entitled, but failed to inquire as to additional benefits he thought he could get, he clearly did not exhaust his administrative remedies as required. *Byrd v. Mac-Papers, Inc.,* 961 F.2d 157, 160 (11th Cir. 1992). Additionally, this Court fails to see how Plaintiff can claim a conspiracy to deny him benefits when he never asked for the benefits, and was never officially denied the benefits.

Therefore, Plaintiff has not raised any issues of material fact on any element he will have to prove at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Additionally, Plaintiff did not exhaust his administrative remedies. Thus, summary judgment is warranted.

Accordingly it is,

**ORDERED** that Defendant's, Group Technologies, Inc., Motion for Summary Judgment with respect to Counts I through IV be **denied;** Defendant's, Group Technologies, Inc., Motion for Summary Judgment with respect to Count V be **granted;** Defendant's, Honeywell, Inc., Motion for Summary Judgment with respect to Count V be **granted;** and Count V be **dismissed** from this action.

**DONE** and **ORDERED.**