Herman L. TOLIVER, Plaintiff,

v.

TRUSTEES OF the PURINA BENEFIT ASSOCIATION, Defendant.

Civ. A. No. 93–255–3–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

May 19, 1994.

Daryl James Morton, Macon, GA, for plaintiff.

Kenneth Banner Banks, Joseph W. Popper, Jr., Macon, GA, for defendant.

## ORDER

OWENS, District Judge.

Before the court are cross-motions for summary judgment filed by plaintiff Herman L. Toliver and defendant Trustees of the Purina Benefit Association. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

## FACTS

Plaintiff Herman L. Toliver was employed by Ralston Purina Company as a Production Shift Supervisor from August 16, 1976, until February 9, 1986. Due to an on the job injury, plaintiff was hospitalized for back surgery from January 28, 1986, until February 9, 1986. On May 26, 1986, plaintiff's physician, Dr. Antonio Fernandez, described plaintiff's condition as "degenerative disc disease, lumbar; ridiculopathy; post-op left L–4 hemilaminectomy, discectomy and foraminotomy."

In May 1986, defendant Trustees of the Purina Benefit Association approved plaintiff for long-term disability benefits.[1] In August 1986, plaintiff was hospitalized a second time for back surgery. Plaintiff was awarded Social Security Disability Benefits in May 1987.

In June 1990, General American Life Insurance Company ("General American"), consultant to defendant Trustees of the Purina Benefit Association, requested updated information concerning plaintiff's condition from Dr. Fernandez. Although Dr. Fernandez's report recommended that plaintiff be considered for "medical retirement," the report also indicated that Dr. Fernandez had last examined plaintiff in November 1988. Accordingly, on August 3, 1990, plaintiff's long-term disability benefits were declined on the basis that plaintiff was not under the regular care of a physician. Plaintiff, however, appealed this determination. Subsequently, Dr. Fernandez issued a second report verifying the continued treatment of plaintiff. The report stated:

This patient was last seen and evaluated by me on August 23, 1990 and as I have stated before, I do feel that from medical standpoint the best treatment for his is [sic] just simply to consider him for medical retirement because he has got a two level radiculopathy with atrophy, reflex changes, multiple weaknesses and sensory deficits that I don't think that he is going to recover from.

I do feel that this patient is totally and permanently disabled. On October 12, 1990, General American recommended that plaintiff's benefits be reapproved.

On November 13, 1990, Sandra Donahue, Manager of Benefit Administration for Ralston Purina Company, wrote to General American and requested that General American consider scheduling a Functional Capacity Assessment ("FCA") to determine plaintiff's re-employment capabilities. This letter was prompted in part because "Dr. Fernandez's report ... d[id] not provide an assessment of [plaintiff's] functional capacity." On November 27, 1990, Ralston Purina authorized General American to request an FCA and a Transferable Skills Analysis ("TSA") for plaintiff. Pursuant to this authorization, General American wrote Dr. Fernandez and requested his permission to perform an FCA on plaintiff. On January 9, 1991, Dr. Fernandez denied General American's request.

On January 24, 1991, H.E. Maves, Director of Employee Benefits Administration for Ralston Purina, informed plaintiff that his disability benefits were to be reinstated effective September 1, 1990. Maves also advised plaintiff that an Independent Medical Examination ("IME") was being arranged to determine if plaintiff continued to meet the pertinent disability requirements. Those requirements provide, in part: " '[T]otal disability' shall mean the complete and permanent inability of a covered employee because of injury or sickness to perform any and every duty of gainful occupation for which he is qualified or may reasonably become qualified by training, education or experience...."

---

1. Defendant Trustees of the Purina Benefit Association is the administrator of a long-term disability benefit plan for Ralston Purina Company.

On April 8, 1991, Dr. Sean McCue performed an IME of plaintiff. At Dr. McCue's request, plaintiff underwent lumbar spine x-rays and an MRI on June 5, 1991. Subsequently, Dr. McCue provided General American written authorization to allow plaintiff's FCA. Dr. McCue's notes concerning the IME state:

> The lumbar MR showed some degenerative changes but no residual or recurrent disk herniation. Flexion, extension lateral films show solid L45 S1 fusion. I have spoken to him at some length about this. He has adjusted fairly well. He knows what he can do and what he can't do and he knows what time he just has to settle down and take it easy. Other times he is able to be mildly to moderately active … He was sent here to see if he could undergo functional capacities assessment. I have discussed this with him. Work Horizons has been recommended by the insurance company and the patient is quite willing to have this carried out. I think that it is safe enough for him to go ahead and do this. Rather than give him any specific limitations at this point I would tell him to pursue activities as tolerated[.]

On June 24, 1992, an FCA was performed on plaintiff by Work Horizons. Work Horizons forwarded a written report concerning plaintiff's FCA to General American on July 13, 1992. The report indicated that plaintiff had decreased cervical flexibility, decreased lumbar flexibility, decreased hip flexion, and decreased ability to sustain climbing, squatting, stooping, or kneeling. In addition, the report recommended that plaintiff be limited to four hours of sitting each workday, two hours of walking each workday, and two hours of standing each workday. Finally, the report concluded that plaintiff's work potential was within the sedentary range.[2]

In August 1992, General American provided a copy of plaintiff's medical file and information concerning plaintiff's education, training, and work history to American International Health and Rehabilitation Services ("American International") for the purpose of conducting a TSA. On September 9, 1992, General American received American International's written report. According to the report, based upon plaintiff's education, training, vocational history, functional ability, educational development, and interest groups, plaintiff qualified for the following jobs: branch manager, cancellation clerk, loss-claim clerk, map clerk, reviewer, rater, policy-value calculator, policy-change clerk, insurance checker, reinsurance clerk, placer, agent contract clerk, claim's clerk, and policyholder information clerk.

On October 14, 1992, General American recommended that plaintiff's long-term disability benefits be denied effective November 1, 1992. Accordingly, on November 2, 1992, Ralston Purina notified plaintiff that effective November 1, 1992, his long-term disability benefits were terminated.

On November 16, 1992, plaintiff appealed the decision to decline his long-term disability benefits. General American, after reviewing information submitted by plaintiff, recommended that plaintiff's appeal be denied. On March 3, 1993, Ralston Purina notified plaintiff of the decision to deny his appeal. On May 11, 1993, plaintiff appealed the decision of March 3, 1993. Again, General American recommended that plaintiff's benefits be declined. On July 26, 1993, Carl Londe, Secretary of the Employee Benefits Council, notified plaintiff of the decision of the Employee Benefits Council to deny plaintiff's claim for benefits. Londe also informed plaintiff that the decision operated to foreclose any further administrative appeals. The decision of the Employee Benefits Council was made pursuant to an express delegation of authority from the Trustees of the Purina Benefit Association.

---

**2.** The Social Security Administration defines "sedentary work" as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

On July 30, 1993, plaintiff filed suit against the Trustees of the Purina Benefit Association pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* In his complaint, plaintiff seeks recovery of his long-term disability benefits. Subsequently, both plaintiff and defendant filed motions for summary judgment on the issue of defendant's decision to deny plaintiff's long-term disability benefits.[3]

### DISCUSSION

■■■ "[A] denial of benefits ... is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). "If the plan does provide the administrator with such discretionary authority, application of the more deferential arbitrary and capricious standard is appropriate." *Guy v. Southeastern Iron Workers' Welfare Fund,* 877 F.2d 37, 39 (11th Cir.1989). The parties agree that the denial of benefits in the case *sub judice* is to be reviewed under the arbitrary and capricious standard.[4]

When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard ... the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made....

As long as a reasonable basis appears for [the defendant's] decision, it must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision.

*Jett v. Blue Cross and Blue Shield,* 890 F.2d 1137, 1139 (11th Cir.1989); *see also Blank v. Bethlehem Steel Corp.,* 926 F.2d 1090, 1093 (11th Cir.1991) ("In applying the arbitrary and capricious standard ... the district court's role is limited to determining whether the contested interpretation was made rationally and in good faith"); *Brown,* 898 F.2d at 1564 ("[W]e reverse the denial of benefits only if the denial is completely unreasonable").

■■■ The question before the court is whether a reasonable basis existed for defendant's decision to deny long-term disability benefits. Although the record reveals some evidence that would tend to indicate plaintiff's eligibility for benefits, the record also supports defendant's conclusion that plaintiff is ineligible.[5] As discussed above, as long as a reasonable basis exists for the decision, the decision must be upheld, "even if there is evidence that would support a contrary decision." *Jett,* 890 F.2d at 1139.

At the time defendant made the decision to decline benefits, the evidence before defendant included the medical report of Dr. McCue, the FCA provided by Work Horizons, and the TSA performed by American International. These reports provide a sufficient basis for the conclusion that plaintiff

3. Although the parties dispute the conclusions reached by defendant in denying plaintiff's benefits, the underlying facts of the case are not in dispute.

4. Plaintiff contends that a modified version of the arbitrary and capricious standard is applicable to the review of the decision at issue. *See Brown v. Blue Cross and Blue Shield,* 898 F.2d 1556, 1563 (11th Cir.1990). In *Brown,* the Eleventh Circuit Court of Appeals "crafted a new, more stringent standard of review when a conflict of interest has been shown to exist on the part of the fiduciary rendering benefits decisions...." *Newell v. Prudential Insurance Company of America,* 904 F.2d 644, 651 (11th Cir.1990). A conflict of interest exists when a plan administrator "is exercising discretion over a situation for which it incurs 'direct, immediate expense as a result of benefit determinations favorable to the [p]lan partici-

pants.'" *Brown,* 898 F.2d at 1561. The record, however, does not indicate the existence of a conflict of interest on the part of the plan administrator. Accordingly, the heightened standard is inapplicable.

5. In support of his motion for summary judgment, plaintiff has included the affidavit of Jackson C. McKay, a rehabilitation consultant. In the affidavit, McKay criticizes the results obtained in plaintiff's FCA and TSA. Plaintiff contends that the affidavit supports his position that defendant's decision to deny benefits was unreasonable. The affidavit, however, was never presented to the administrator while the decision at issue was being made. Consequently, the court may not properly consider the affidavit as it was not a "fact[] ... known to the administrator at the time the decision was made." *Jett,* 890 F.2d at 1139.

was not totally disabled, as defined by the disability requirements at issue. The Purina Benefit Association Long–Term Disability Plan defines "total disability" as "the complete and permanent inability of a covered employee because of injury or sickness to perform *any and every duty of gainful occupation* for which he is qualified or may reasonably become qualified. . . ." The reports submitted by Dr. McCue, Work Horizons, and American International indicate that although plaintiff's functional capacity is severely limited, there are still a number of activities and jobs that plaintiff is capable of performing. The court holds, therefore, that a reasonable basis existed for defendant's decision to deny long-term disability benefits, based on the facts known to defendant at the time the decision was made.[6] Accordingly, defendant's motion for summary judgment is **GRANTED.** As the issue presented in plaintiff's motion for summary judgment is necessarily resolved by this holding, plaintiff's motion for summary judgment is **DENIED.**

### CONCLUSION

Defendant Trustees of the Purina Benefit Association's motion for summary judgment is **GRANTED.** Plaintiff Herman L. Toliver's motion for summary judgment is **DENIED.**

**SO ORDERED.**

---

[6] Plaintiff contends that defendant should have given great weight to Dr. Fernandez's conclusion that plaintiff is totally disabled. The Eleventh Circuit, however, has recognized that when a "treating physician has an economic interest in the matter," the administrator is not required to accord that physician's conclusions any greater weight than that given other sufficiently reliable evidence. *Jett,* 890 F.2d at 1140. In addition, the court notes that the term "totally disabled" may be subject to several interpretation. For example, as the term is used in the plan at issue, plaintiff must be disqualified from performing "any and every duty of gainful occupation for which he is qualified *or may reasonably become qualified."* There is absolutely no evidence in the record that Dr. Fernandez's conclusion was based on this definition of "totally disabled." Further, there is nothing in the record to suggest that Dr. Fernandez is qualified to address from a vocational standpoint those occupations for which plaintiff is qualified or may reasonably become qualified.